UNITED STATES of America,
Plaintiff–Appellee,

v.

Ferlin PLATERO, Defendant–Appellant.

No. 95–2026.

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1995.

Teresa E. Storch, Assistant Federal Public Defender, Albuquerque, New Mexico, for defendant-appellant.

Robert J. Gorence, First Assistant U.S. Attorney, Albuquerque, New Mexico (John J. Kelly, United States Attorney, Albuquerque, New Mexico, with him on the brief), for plaintiff-appellee.

, Before EBEL and HOLLOWAY, Circuit Judges, and BROWN,* District Judge.

HOLLOWAY, Circuit Judge.

Defendant–Appellant Ferlin Platero appeals from an order of the district court, on remand, upholding his conviction on three counts of aggravated sexual assault in violation of 18 U.S.C. § 2241(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I

### A

There was evidence presented by the government showing the following:

After work on September 1, 1992, Susan Francis drove her co-worker Vernon Laughlin to the Sports Page Lounge in Gallup, New Mexico. She then drove home. After her husband left for a class, Francis called Laughlin at the bar. Laughlin offered to buy dinner for Francis. After her husband returned, Francis joined Laughlin at the bar. Laughlin and Francis had a drink at the bar and then went to a restaurant and ate. They returned to the Sports Page Lounge around 10:30 p.m. and stayed until around 12:30 a.m. Francis and Laughlin then left the bar and headed out of Gallup. Laughlin was driving.

---

* Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

Francis testified that she was reclined in her seat, "ready to fall asleep," when Laughlin told her that they were being pulled over. She looked back and saw flashing lights. They pulled onto a dirt road. Platero, a security guard employed by Gallup Security Service, approached and said that Laughlin had been weaving all over the road. Platero asked more questions and asked for Laughlin's driver's license. Laughlin told Platero that he did not have a driver's license. Laughlin testified that he thought Platero was a police officer.

Platero told Laughlin to step out of the car. At some point, according to Laughlin, Platero threatened to arrest him for DWI. Laughlin testified that Platero went to the driver's side and asked Francis questions. Platero asked for Francis's driver's license, and she gave it to him. Platero then went back to his car. When he returned he told Laughlin "I'll give you a break this time. You better start walking. Take a hike." Laughlin said that after he walked about 10 or 15 yards, Platero came up to him and told him he was going to arrest Francis for being uncooperative.

Francis testified that Platero took her driver's license back to his car. She said he returned a few minutes later and told her to get out of her car and stand next to it. Platero told Francis that he was taking her in. Francis said that when she first got into Platero's car she thought he was just going to take her home. However, he told her that he was taking her in for DWI. When she complained that she hadn't been driving, Platero got angry and said: "If you're not going to cooperate, I'm going to have to put these handcuffs on you." Platero told Francis that he would add on more charges if she said any more. He then handcuffed her. Laughlin testified that he saw Platero's car leave and returned to Francis's car. He got in and fell asleep.

Platero drove the car north away from Gallup for about ten minutes and then turned onto a dirt road. He parked and removed Francis's handcuffs. She testified that Platero then raped her twice in the front seat of the car and forced her to have oral sex.

Afterwards Platero drove Francis back to her car. She was still buttoning her blouse when Platero drove up to her car. She opened the door to her car and saw Laughlin. Laughlin said that Francis was still trying to fix her clothes and button her blouse. According to Laughlin, Platero said he brought Francis back because she was being uncooperative and that "she was still in the same condition."

Laughlin and Francis then drove off, and Francis started crying. Laughlin asked if Platero had raped her. She told him he had, and Laughlin drove her to the Gallup Indian Medical Center, arriving there at around 6 or 7 in the morning.

Platero denied pulling Francis and Laughlin over and said that the car was stopped when he encountered it. He admitted having sex with Francis, but asserted it was consensual. On cross-examination Platero admitted that on the way back to Francis's car he told her that he "hadn't done anything to her, that she had done it to herself."

## B

Platero was charged by an indictment with three counts of aggravated sexual assault on the Navajo Reservation on September 2, 1992, under 18 U.S.C. § 2241(a), arising out of this incident (Counts I, II and III), and other offenses not relevant here. The theory of defense to the charges involved here was that Francis had consented to sex with Platero and had fabricated her sexual assault allegations against Platero in order to protect her relationship with Laughlin.

Platero filed a motion under Fed.R.Evid. 412(b)(1) seeking to introduce evidence of Francis's alleged "past sexual behavior" under the rule which was generally said to be her involvement in a "romantic relationship" with Laughlin at the time of the alleged rape. I R. doc. 44 at 1. This was offered in order to show that Francis had a motive to fabricate the rape allegations against Platero. At the Rule 412 hearing, Laughlin and Francis testified that their relationship turned from friendship to intimacy after the rape. (They were living together at the time of trial.) Anna Mike, Laughlin's former girlfriend, tes-

tified that she believed that Francis and Laughlin were having an affair as early as 1990. The district court excluded the evidence regarding Francis's and Laughlin's relationship, finding the facts distinguishable from *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam), which held such evidence admissible in similar circumstances.

As noted in Platero's first appeal in this case, the only difference between *Olden* and the instant case is the uncertainty as to the existence of a relationship between Laughlin and Francis at the time of the rape. *United States v. Platero*, No. 93–2317, slip op. at 3, 1994 WL 645339 (10th Cir. Nov. 16, 1994) (*Platero I*). In *Platero I*, we remanded to the district court, stating that "[t]he application of the *Olden* principle is dependant [sic] upon the existence of a relationship between Francis and Laughlin." *Id.* We concluded that "the proper outcome hangs in the balance. If there had been an existing relationship between Francis and Laughlin at the time of the alleged crime, defendant should have been allowed to cross-examine Francis, as required by *Olden*." *Id.* We affirmed in part,[1] and remanded in part "for a determination of the factual issue addressed in this order and judgment." We also directed that "[f]ollowing that determination, the district court shall proceed with a disposition appropriate to its finding and the thoughts expressed here."

On remand, the district judge found that the testimony of Anna Mike was not credible and the testimony of the other witnesses was credible. On the basis of his own credibility determinations, the judge concluded that no sexual relationship existed between Laughlin and Francis at the time of the sexual assault. Finding no factual predicate for allowing cross-examination regarding the relationship between Francis and Laughlin, the judge let stand the conviction for aggravated sexual assault.

## II

Platero urges two principal grounds for reversal of his convictions on Counts I, II and III for sexual assault, arguing that (1) he was denied his right to trial by jury by the refusal to submit to the jury the question whether an extramarital relationship existed between Laughlin and Francis at the time of the offenses and by the determination of that issue by the trial judge alone; and (2) he consequently was denied his right under the Confrontation Clause of the Sixth Amendment to confront and cross-examine Francis on that issue. We now turn to these questions.

In contending he was denied his right to trial by jury and confrontation, Platero more specifically contends that he was deprived of such constitutional rights because the district judge himself made the credibility determinations and concluded there was no "extramarital affair" between Francis and Laughlin. Appellant's Brief in Chief at 19. Platero says that on remand the government argued that this court had directed the trial judge to make a factual finding on the existence of such a relationship. *Id.* at 21. The government argues to us that on remand the trial judge did "*exactly* what this court required of it," and followed the mandate. Brief of Appellee at 17 (emphasis in original). The contentions made thus bring into play the doctrine of the law of the case and what was decided and required by our *Platero I* decision and mandate.

Our order and judgment in *Platero I* stated:

In this case, the foundation upon which the *Olden* paradigm is built, while evident in the testimony, has not been resolved on the record. The application of the *Olden* principle is dependant [sic] upon the existence of a relationship between Francis and Laughlin. There was testimony concerning the fact of the relationship, but it was rebutted. Unfortunately, while the district court appeared to have disbelieved Laughlin's former girlfriend, the court did not resolve the discrepancy in the testimony.

---

1. We affirmed Platero's other convictions on the charges made in Counts IV, V and VI. Those convictions are not at issue in this appeal.

At this juncture, the proper outcome hangs in the balance. If there had been an existing relationship between Francis and Laughlin at the time of the alleged crime, defendant should have been allowed to cross-examine Francis, as required by *Olden.* Obviously, if there was no relationship, the entire logic behind the defendant's quest evaporates.

. . . .

**AFFIRMED IN PART** and **REMANDED IN PART** for a determination of the factual issue addressed in this order and judgment. Following that determination, the district court shall proceed with a disposition appropriate to its finding and the thoughts expressed here.

*Platero I,* slip op. at 3–4, 6.

■ We are convinced that our mandate required that the district court determine whether there was in fact a relationship at the time of the assault, not merely whether there was sufficient evidence for a reasonable jury to find that such a relationship existed. Our belief is supported by the statement: "[f]ollowing that determination, the district court shall proceed with a disposition appropriate to *its finding. . . .*" Slip op. at 6 (emphasis added). On the basis of these clear statements in *Platero I,* we must agree with the government that under our prior decision and mandate, the district judge did comply with the procedure we directed. Our first question then is whether our prior decision must now be followed in this appeal under the doctrine of the law of the case.

In *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), the Supreme Court stated:

Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.404 (1982) (hereinafter Moore). Law of the case directs a court's discretion, it does not limit the tribunal's power. . . .

*See also Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) ("the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.). . . ."). In *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531 (10th Cir.1995), we said that:

unlike the doctrines of res judicata or collateral estoppel, 'the law of the case doctrine has long been considered only a rule of practice in the courts and not a limit on their power.' [*United States v. Monsisvais,* 946 F.2d 114, 116 (10th Cir.1991) ]. Nevertheless, the circumstances justifying a departure from the law of the case are narrow. The most widely quoted statement is by former Tenth Circuit Chief Judge Orie Phillips, sitting in another circuit, that the law of the case must be followed 'unless the evidence on a subsequent trial was substantially different, *controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.'* *Id.* at 117 (quoting *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967)); . . . .

52 F.3d at 1536 n. 4 (emphasis added). Thus, as noted in *Pittsburg & Midway Coal Mining Co.,* one recognized ground for relaxing the rule of the law of the case is an intervening change in the law. *See also Davis v. United States,* 417 U.S. 333, 342, 94 S.Ct. 2298, 2302, 41 L.Ed.2d 109 (1974) (court of appeals erred in holding that law of the case, as determined in earlier appeal from conviction, precluded petitioner from securing relief under 28 U.S.C. § 2255 on basis of intervening change in law); *McGhee v. Draper,* 639 F.2d 639, 646 (10th Cir.1981) (applying new rule where intervening authority has removed an earlier determination as law of the case); *Bromley v. Crisp,* 561 F.2d 1351, 1363 (10th Cir.1977) (applying law of the case where "[n]o supervening events, such as a change of law, have been demonstrated."), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978).

■ Thus Supreme Court and other precedents, including those of our own court, instruct us that an intervening change in the law may serve as a cogent reason for relaxing the doctrine of the law of the case, as may a conviction that relaxing the rule is required to avoid working a manifest injustice.

To consider the law of the case doctrine's proper application here, we must focus on the merits of the constitutional claims before us. On the jury trial claim, the parties differ sharply in their arguments on the submission to the jury of the question of the existence *vel non* of an extramarital relationship between Francis and Laughlin. Platero argues that it was constitutional error not to allow consideration by the *jury* of any evidence of such a relationship between Francis and Laughlin at the time of the alleged assault, and not to permit cross-examination of Francis on this subject. Appellant's Brief in Chief at 19–20.

The government asserts it was not a constitutional violation for the *judge* to decide on remand that there was no sexual relationship. Brief of Appellee at 17–18. The government specifically relies on Fed.R.Evid. 412(b)(1) as it existed before December 1, 1994,[2] and on Fed.R.Evid. 104(a), for its contention that it was for the judge to make the finding on the relationship as a preliminary question concerning the admissibility of evidence. Brief of Appellee at 20–21. Platero, however, points to significant new wording of Rule 412(b), effective December 1, 1994,[3] Appellant's Reply Brief at 6, in arguing that *Olden* applies here.

**2.** Fed.R.Evid. 412(b), before December 1, 1994, provided in part:

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of an offense under chapter 109A of title 18, United States Code, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—
(1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; . . . .

**3.** Fed.R.Evid. 412, as effective December 1, 1994, provides in part:

The significance of the time of the amendment here is that former Fed.R.Evid. 412 was in effect at the time of the offense (September 2, 1992), Platero's trial below (July 1, 1993), and the decision of *Platero I* on appeal (November 16, 1994). But the important revision of Rule 412 became effective December 1, 1994. The trial judge's order finding that there was no existing relationship between Francis and Laughlin at the time of the offense, and leaving the guilty verdicts standing, was entered January 13, 1995, over a month after new Rule 412 became effective. The order of the Supreme Court of April 29, 1994, submitting the amendments to Federal Rule of Evidence 412 provided:

2. That the foregoing amendment to the Federal Rules of Evidence shall take effect on December 1, 1994, and shall govern in all proceedings thereafter commenced and, *insofar as just and practicable, all proceedings then pending.*

154 F.R.D. 512 (April 29, 1994) (emphasis added).

Since the protection of constitutional rights is involved, it is logical that amended Fed. R.Evid. 412 should be applied in determining the issues of this appeal. This application is strongly favored by the Supreme Court's order to follow the new rule "insofar as just and practicable" in all proceedings pending on December 1, 1994, as Platero's case was.

The most significant change in Rule 412 is discussed in the notes of the advisory committee on the rules. The committee noted:

**Rule 412. Sex Offense Cases; Relevance of Alleged Victim's Past Sexual Behavior or Alleged Sexual Predisposition**
(a) **Evidence generally inadmissible**—The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
. . . .
(b) **Exceptions.**—
(1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
. . . .
(C) evidence the exclusion of which would violate the constitutional rights of the defendant.

One substantive change made in subdivision (c) is the elimination of the following sentence: "Notwithstanding subdivision (b) of rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, *the court,* at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and *shall determine such issue.*" On its face, this language would appear to authorize a trial judge to exclude evidence of past sexual conduct between an alleged victim and an accused or a defendant in a civil case *based upon the judge's belief that such past acts did not occur. Such an authorization raises questions of invasion of the right to a jury trial under the Sixth and Seventh Amendments. See* 1 S. Saltzburg & M. Martin, *Federal Rules of Evidence Manual,* 396–97 (5th ed.1990).

Fed.R.Evid. 412 advisory committee's note (emphasis added). Saltzburg and Martin, cited by the advisory committee, recognized the serious constitutional problem created by the old rule:

Consider, for example, the situation in which the defendant claims that he had prior consensual sexual activities with the victim on 7, 17, 70 or 80 consecutive days prior to the day on which the sexual encounter giving rise to the prosecution took place. According to the Rule, if the Trial Judge disbelieves the defendant and concludes that no such activity took place, the Trial Judge should rule that the evidence of the prior sexual activities is not to be admitted. *To us, this presents a clear violation of the right to jury trial.*

This is quite a bit different from having Judges rule on most competency questions (i.e., questions that arise under Rules that permit or require exclusion of evidence that is relevant).... In deciding a competency question, the Judge is not usurping the function of the jury. The Judge is not addressing the merits of the case and deciding whether one side or the other is truthful. Rather, the Judge is assuring that the evidence meets the usual evidentiary standards. *But when the Judge decides whether or not a defense is true or false and decides that on the basis of the credibility of the witnesses, the Judge is doing what the jury is supposed to do in a serious criminal case covered by the Sixth Amendment.* Similarly, when the residual provision [old rule 412(b)(1)] is invoked, the Rule suggests that the Trial Judge must determine not only whether the defendant's evidence if true, must be admitted under the Constitution, *but also whether the evidence is true. Judges who decide that they do not believe the evidence and exclude it threaten to take over a function that has historically been reserved to the jury.*

1 Stephen A. Saltzburg & Michael M. Martin, *Federal Rules of Evidence Manual: A Complete Guide to the Federal Rules of Evidence* 396 (5th ed.1990) (emphasis added).

While the example cited by the advisory committee notes and Saltzburg and Martin addressed only the situation where an accused seeks to offer evidence of past sexual conduct between himself and the alleged victim, the same constitutional concerns are also present in the case before us. The constitutional problem is the usurpation of the jury's function by the trial judge's determination himself of the nonexistence of the relationship and his exclusion of evidence offered in support of the defendant's theory.

Here, the district judge's decision on remand was based on his determination of the witnesses' credibility, and had the effect of barring Platero from presenting evidence which if believed by the jury could have damaged Francis's credibility as a witness and possibly have caused the jury to disbelieve Francis's testimony entirely. The judge's decision under the old version of Rule 412(c)(2) therefore impinged on Platero's right to trial by jury. Our extension of the advisory committee reasoning to questions of conditional relevance other than those related to prior consensual sex between an accused and the alleged victim takes into account the rationale of *Olden,* which involved "an extramarital relationship" between the defendant's accuser and a third person, like

that alleged in this case.[4] Our application of the advisory committee's reasoning here finds support in Saltzburg and Martin:

> If a rule were to say that a defendant may not offer evidence in defense unless the Judge believes it, that rule would violate the right to jury trial. *This is what Rule 412 would tend to do if it is read to allow the Judge to bar reasonable defense evidence that the Judge personally concludes is not credible....* A Judge may *not bar relevant evidence that itself establishes a defense recognized in law.* See, e.g., *United States v. Garvin,* 565 F.2d 519 (8th Cir.1977); *United States v. Riley,* 550 F.2d 233 (5th Cir.1977). See also *United States v. Thompson,* 615 F.2d 329 (5th Cir.1980).

Thus there was an important change in the Federal Rules of Evidence by the December 1, 1994, revision of Rule 412(b) and the omission of the language which required the *court* to accept the evidence on sexual conduct and to determine whether the condition of fact relating thereto was fulfilled. The advisory committee obviously was aware of the constitutional implications of allowing the court to make the determination of the conditional fact, and therefore *removed* the requirement of former Rule 412(c)(2) that "the court" accept such evidence on sexual conduct and "determine such issue." This is a significant intervening change in the law that impacts this appeal and supports relaxation of the law of the case from *Platero I* and its mandate that the trial judge decide the factual issue whether a relationship existed between Francis and Laughlin. This relaxation of the law of the case also avoids a manifest injustice of infringement of Sixth Amendment rights.

Therefore this panel may turn to the merits of the constitutional claims of Platero that the determination whether an extramarital relationship existed between Francis and Laughlin by the trial judge without submission of the issue to the jury, and without Platero being able to confront and cross-examine his accuser, violated Platero's Sixth Amendment rights.

---

**4.** We construe the rationale of *Olden* to apply to

## III

### A

■ In connection with his trial by jury issue, Platero relies, *inter alia,* on *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). There the admissibility of similar acts evidence under Fed.R.Evid. 404(b) arose in a prosecution for selling stolen goods in interstate commerce. The trial judge admitted testimony about the defendant's having offered to sell, for unusually low prices, large numbers of items, some of which were proven to have come from a stolen shipment of goods. The trial judge instructed the jury that the evidence about the earlier acts was to be used only to establish the defendant's knowledge of the stolen character of the goods, and not to prove his character. *Id.* at 684, 108 S.Ct. at 1498. The defendant argued that the submission of the issue to the jury was error; he said that a preliminary finding that he had committed the earlier similar acts should have been made by the judge under Rule 104(a). *Id.* at 686–87, 108 S.Ct. at 1500. The Court unanimously rejected this argument:

> Rule 104(a) [of the Federal Rules of Evidence] provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)." ...
>
> ....
>
> Evidence is admissible under Rule 404(b) only if it is relevant. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Advisory Committee's Notes on Fed.Rule Evid. 401, 28 U.S.C.App., p. 688. In the Rule 404(b) context, similar act evidence is relevant only *if the jury* can reasonably conclude that the act occurred and that the defendant was the actor. See *United States v. Beechum,* 582 F.2d 898, 912–913 (CA5 1978) (en banc)....
>
> Such questions of relevance conditioned on a fact are dealt with under Federal

---

romantic as well as to extramarital relationships.

Rule of Evidence 104(b). *Beechum, supra,* at 912–913; see also E. Imwinkelried, Uncharged Misconduct Evidence § 2.06 (1984). Rule 104(b) provides:

"When the relevancy of evidence depends upon the fulfillment of a condition of fact, *the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.*"

*Huddleston,* 485 U.S. at 687, 689–90, 108 S.Ct. at 1500, 1501 (emphasis added). *Huddleston* demonstrates that where there is such a question of relevancy depending on a condition of fact, like the relationship issue here, that question goes to the *jury* for a determination, not to the judge.

■ This is the application our court has made of *Huddleston.* In *United States v. Herndon,* 982 F.2d 1411 (10th Cir.1992), the defendant argued that similar acts evidence was irrelevant because the government had failed to prove that he had committed the earlier similar offense on which proof had been admitted. We noted that *Huddleston* had "held that *a trial court need not make a preliminary finding that the government proved the existence of the similar act*" by the defendant before submitting the similar acts evidence to the jury. *Id.* at 1415 (emphasis added). Obviously, as *Huddleston* and *Beechum* make clear, the trial judge's function is to determine *only* the presence of "sufficient evidence to support a finding by the jury that the defendant committed the similar act," *id.* (quoting Rule 404(b))—a "relevancy conditioned on fact" question under Rule 104(b) as opposed to a preliminary question of admissibility of the type enumerated in Rule 104(a) (*e.g.,* qualification of a witness, existence of a privilege).[5] When the trial judge here made the conclusive finding on relevancy conditioned on fact (the relationship issue) adversely to Platero, this ran counter to the procedural teaching of *Huddleston* and *Herndon.*

We noted above the Supreme Court's favorable citation of *United States v. Beechum* in *Huddleston.* As part of *Beechum*'s analysis it is instructive to note this observation in the Fifth Circuit's en banc opinion:

The standard for the admissibility of extrinsic offense evidence is that of rule 104(b): *"the preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist."* 21 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5054, at 269 (1977).

*Beechum,* 582 F.2d at 913 (emphasis added).

If instead the trial judge proceeds to decide the preliminary relevancy-conditioned-on-fact issue against the proponent where the jury *could* reasonably find the fact to exist, the judge has violated the proponent's right to a jury trial, contrary to clear precedent from the Supreme Court and our court applying the rules of evidence.

**B**

In support of his Confrontation Clause claim, Platero relies on *Olden v. Kentucky, supra.* There petitioner Olden challenged his conviction for forcible sodomy. At the time of the alleged offense, the victim Starla Matthews was "apparently" involved in an extramarital relationship with Bill Russell, Olden's half brother. At the time of trial, Matthews and Russell were living together. On the night of the incident in *Olden,* Matthews left a bar with Olden and another man, Harris, in Harris's car. Matthews claimed that she was driven to another location, where Olden threatened her and then raped her. After the alleged assaults, Matthews was dropped off near Russell's house, at her request.

Olden asserted a consent defense. His theory was that Matthews concocted the rape story to protect her relationship with Russell, who would have grown suspicious on seeing her disembark from Harris's car. In order to demonstrate Matthews's motive to lie, it

---

**5.** The government's reliance on *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), and other cases dealing with findings on preliminary questions of admissibility under Rule 104(a) (*e.g.,* qualification of a witness,

existence of a privilege, etc.) is misplaced. As explained below, the question for the trial judge in Platero's case was instead a preliminary relevancy-conditioned-on-fact issue under Rule 104(b).

was crucial, Olden contended, that he be allowed to introduce evidence of Matthews's and Russell's current cohabitation. 488 U.S. at 230, 109 S.Ct. at 482. Evidence of their living arrangements was excluded by the granting of the prosecutor's motion in limine. The Supreme Court held that this ruling violated Olden's Sixth Amendment right to confront his accuser:

> [P]etitioner has consistently asserted that he and Matthews engaged in consensual sexual acts and that Matthews—out of fear of jeopardizing her relationship with Russell—lied when she told Russell she had been raped and has continued to lie since. *It is plain to us that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." Delaware v. Van Arsdall. . . .*

*Id.* at 232, 109 S.Ct. at 483 (emphasis added).

*Platero I* noted that *"Olden* bears some remarkably similar circumstances" to Platero's case. Slip op. at 3. *Platero I* reasoned, however, that the critical fact was unresolved—the predicate relationship of the victim with another man. In *Platero I,* we sent the case back for a determination of this relevancy-conditioned-on-fact issue by the judge, which was in accord with provisions of then existing Fed.R.Evid. 412(c)(2) (the court "shall determine such issue."). However, now, with the change in the law by the omission of the Rule 412(c)(2) provision that the court determine whether the condition precedent to relevancy has been fulfilled, issues of relevancy-conditioned-on-fact should be considered under Fed.R.Evid. 104(b). Under Rule 104(b), the court determines only whether the evidence is sufficient to support a jury finding that the condition has been met. The clear teaching of *Huddleston, Herndon,* and similar cases, is that if the evidence would support such a finding, the *jury* must be permitted to determine the issue.

Our record shows that at the Rule 412 hearing, both Francis and Laughlin admitted that, at the time of the hearing, they were involved in a romantic relationship with each other. This was the equivalent of the "current cohabitation" showing involved in *Olden,* 488 U.S. at 230, 109 S.Ct. at 482. Laughlin admitted that in January or February 1993 Francis moved in with him. He also testified that prior to the incident he and Francis went out "maybe once or twice a month" and would sometimes stay out until 11:00 or 12:00. Jimmy Francis, then Susie Francis's husband, testified that when his wife and Laughlin would go out in the evenings, she would usually get home at one o'clock.

Anna Mike testified that she was Laughlin's girlfriend for five years; that their relationship ended in February 1992; that Francis was having an affair with Laughlin at that time; and that when she confronted Laughlin about a "hickey" on his neck, he told her that Susie Francis had given it to him.

In addition to the testimony at the hearing, at trial Diedra Gonzales, a McKinley County sheriff's officer, testified as a government witness. Gonzales read from her police report about statements made to her by Francis the morning after the alleged assault. Three times Francis referred to Laughlin as her "boyfriend." Also at trial, Dr. Elizabeth Saunders, the physician who examined Francis at the hospital following the incident, testified that she had asked Francis if she had anything to drink and that Francis had said that she had had three beers with dinner with her boyfriend the night of the alleged assault.

We examine this evidence without weighing its credibility, *see Huddleston,* 485 U.S. at 690, 108 S.Ct. at 1501, and conclude that Platero clearly presented sufficient evidence such that "the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.* Therefore, this evidence should have been submitted to the jury, and Platero should have been permitted to cross-examine Francis about her relationship with Laughlin at the time of trial and earlier when the assault allegedly occurred, under the relevance rationale of *Olden.*

At the new trial, which we direct on remand, cross-examination of Francis must be permitted on her relationship with Laughlin, if a showing similar to that outlined above is

made that Francis had a romantic or sexual relationship with Laughlin. And if a showing is made so that the jury could reasonably find such a relationship existed between Francis and Laughlin at the time of the alleged assault, the jury should be instructed that it should first determine whether there was a romantic or sexual relationship between Francis and Laughlin at the time of the alleged assault; that if it finds no such relationship, it should disregard the cross-examination of Francis on that subject; otherwise the jury may consider that cross-examination and other evidence of the relationship between Laughlin and Francis in determining Platero's innocence or guilt.

### IV

In sum, it appears clear that there were constitutional infringements of Platero's right to trial by jury and his right of confrontation provided by the Sixth Amendment. These basic constitutional violations cannot be held harmless error on this record. Accordingly, the judgment is **REVERSED** and the case is **REMANDED** for further proceedings in accord with this opinion.