**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENATH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROGER ANDREW TALK, a/k/a
Roderick Talk,

    Defendant - Appellant.

No. 97-2088

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-96-1191-JC)**

---

Mary Y.C. Han, Albuquerque, New Mexico for the Defendant - Appellant.

James T. Martin, Assistant U.S. Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico for the Plaintiff - Appellee.

---

Before **BRISCOE** , **McKAY** and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

---

    Roger Andrew Talk moves this court to vacate his sentence pursuant to 28 U.S.C. § 2255. His motion is based on Koon v. United States , 116 S. Ct. 2035 (1996), which, he argues, changed the standard of review applied on appeal to a

sentencing court's departure from the sentencing guidelines. More precisely, he argues that under Koon this court erred by rejecting downward departures awarded to him on two occasions by the United States District Court for the District of New Mexico. According to appellant, had we reviewed those departures under the correct standard of review, we would have upheld them—thus, his current sentence, based as it is on an erroneous reversal of all downward departures entertained by the sentencing court, would have to be vacated.

## I

Convicted of aggravated sexual abuse, Talk was sentenced to a term of imprisonment, with no upward or downward departures. Both Talk and the government appealed his sentence, which was reversed and remanded for vacation and resentencing on the grounds that an adjustment for acceptance of responsibility was unwarranted and an enhancement for use of force was required. See United States v. Talk, 13 F.3d 369 (10th Cir. 1993) (" Talk I ").

At resentencing, the district court departed downwards because (1) Talk's criminal conduct was a single act of aberrant behavior and (2) Talk had strong family and community ties and responsibilities. In response to the government's appeal, this court reversed and remanded, ordering that Talk's sentence be vacated and that he be resentenced at the offense level that would have applied in

the absence of the downward departure.    See United States v. Talk  , No. 94-2120, 1995 WL 66583, at *1 (10th Cir. Feb. 7, 1995) ("    Talk II ").

At resentencing, however, the district court once again granted defendant's motion for a downward departure, finding that "there is new information not previously considered by this Court or the Tenth Circuit Court of Appeals in determining the appropriateness of a downward departure."    See I R., tab 98, at 2. The court relied on a combination of factors for this decision, including the defendant's family ties, educational accomplishment, employment record, lack of criminal history, and temperance.    Id.  On appeal, we once again reversed, noting that "Congress has divested judges of [the] latitude" at sentencing shown in Talk's case.  See United States v. Talk  , No. 95-2179, 1995 WL 712678, at *1 (10th Cir. Dec. 4, 1995) ("   Talk III ").  Further, we determined that the district court was bound by the terms of our mandate in     Talk II  not to depart below the offense level specified therein.  Consequently, we remanded for resentencing in accordance with   Talk II .  Id. at **1-**2.

At his third and final resentencing, the district court denied the defendant a downward departure.  No appeal was taken.  Once     Koon  was handed down, however, Talk filed the present § 2255 motion, claiming error in      Talk II  and Talk III in the appellate court's application of an insufficiently deferential standard of review to the sentencing court's downward departures.  He argues that this

erroneous review violates his constitutional rights to due process, resulting in substantial injustice. The district court, though recognizing the tension between Koon and both Talk II and Talk III, denied the motion, finding that "[t]his court is not in a position to reverse the Tenth Circuit's clear directive." See I R., tab 12, at 6; id. at tab 14. The district court granted Talk a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A) & (B). He now appeals.

## II

We first consider three procedural obstacles to Talk's present appeal: procedural bar, certification of appealability, and law of the case. In the peculiar circumstances of this case, Talk surmounts the first two of these obstacles. Law of the case, however, appears to preclude any claim of error based on Talk II's consideration of family ties and responsibilities.

## A

Though Talk has already appealed his sentence three times, he has not raised the question at hand. "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). However, if

- 4 -

the government fails to raise Frady's procedural bar until the appellate level, it is not entitled to disposition on those grounds. See id. at 379; see also United States v. Hall, 843 F.2d 408, 410 (10th Cir. 1988) (holding that because government failed to raise Frady defense before district court and on appeal, it is deemed "to have waived its interest in the finality of the judgment"). We may raise Frady sua sponte if doing so will further "'the interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice.'" Allen, 16 F.3d at 378-79 (quoting Hines v. United States, 971 F.2d 506, 509 (10th Cir. 1992)). Where these interests are not furthered, however, we can simply address the merits of the petition. See id. at 379.

In this case, the government failed to raise this defense before the district court. Moreover, substantial resources have already been spent by both sides in litigating the merits, so procedural disposition may be inefficient. See Hardiman v. Reynolds, 971 F.2d 500, 503 n.5 (10th Cir. 1992). We therefore exercise our discretion not to raise a procedural bar to Talk's motion.

**B**

Talk commenced this collateral attack on August 30, 1996, so it is governed by the requirement in the Antiterrorism and Effective Death Penalty Act that a certificate of appealability be issued prior to appeal. See 28 U.S.C. § 2253(c)(1)(B). Certificates of appealability may be issued by district courts. See

United States v. Simmonds, 111 F.3d 737, 741 & n.4 (10th Cir. 1997). Such certification may issue only when a petitioner "ma[kes] a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). In addition, the certificate "shall indicate which specific issue or issues satisfy [this] showing." § 2253(c)(3).

The district court issued a certificate of appealability that certainly fails to satisfy this last requirement. Further, it is by no means obvious that Talk made a substantial showing of the denial of constitutional right. But the government fails to raise any objection to the district court's certification, and, although the absence of a certificate precludes an appeal, an erroneously-issued certificate does not deprive us of jurisdiction to hear a certified appeal. See Young v. United States, 124 F.3d 794, 799 (7th Cir. 1997).

> The certificate is a screening device, helping to conserve judicial (and prosecutorial) resources. . . . But once the briefs have been written and the case heard, there is little point in scrutinizing the certificate of appealability. An obligation to determine whether a certificate should have been issued, even if the parties do not present this issue for decision—a step entailed by the conclusion that a proper certificate is a jurisdictional requirement—would increase the complexity of appeals in collateral attacks and the judicial effort required to resolve them, the opposite of the legislative plan.

Id. Accordingly, we do not raise the validity of the certificate sua sponte.

- 6 -

## C

The magistrate judge, and by adoption the district court, held that the district court was not free to ignore the prior mandate of this court in Talk II. See Appellant's Br., App. 1, at 6 ("[T]he court is mindful of the Tenth Circuit's explicit directive to resentence Talk to level 31."). Though not stated explicitly, we have no doubt that the rationale for refusing the requested § 2255 relief was law of the case. See id. ("This Court is not in a position to reverse the Tenth Circuit's clear directive.").

If Koon does work an intervening change in the standard of review applicable to downward departures, however, that "may serve as a cogent reason for relaxing the doctrine of the law of the case." United States v. Platero, 72 F.3d 806, 811 (10th Cir. 1995). Indeed, a court of appeals errs by holding that law of the case, as determined in an earlier appeal from conviction, precludes a petitioner from securing relief under 28 U.S.C. § 2255 on the basis of an intervening change in the law. See Davis v. United States, 417 U.S. 333, 342 (1974). Consequently, the law of the case, as relied on by the magistrate judge and district court, will only apply if Talk's § 2255 motion is not sustainable on its merits.

The government also argues, however, that Talk I correctly reviewed the district court's initial refusal to downward depart. As the government reads that

- 7 -

case, the district court refused in its discretion to grant Talk a downward departure. Appellee's Br. at 21. Consequently, that decision should continue to control the outcome of this case, regardless of the strength of any Koon-based claims against Talk II or Talk III. Although this claim is meritless in part, we agree that Talk I does preclude Talk's collateral attack on Talk II's denial of a departure based on family ties and responsibilities.

By definition, Talk I cannot have reviewed a discretionary refusal to depart because we lack jurisdiction to conduct any such review. See United States v. Eagan, 965 F.2d 887, 893 (10th Cir. 1992). Furthermore, the district court's initial refusal to depart does not become binding under law of the case. In Talk I, this Court vacated Talk's sentence and remanded for resentencing, see Talk I, 13 F.3d at 372, requiring the district court to begin anew with de novo sentencing proceedings, see United States v. Ortiz, 25 F.3d 934, 935 (10th Cir. 1994). The district court was only bound by the law of the case as stated by Talk I, not by its own previous refusal to depart. See United v. Smith, 930 F.2d 1450, 1456 (10th Cir. 1991). "[T]he court on remand has the discretion to entertain evidence that could have been presented at the original sentencing even on issues that were not the specific subject of the remand." United States v. Moore, 83 F.3d 1231, 1233 (10th Cir. 1996).

- 8 -

That said, however, Talk I holds that as a matter of law, Talk's family responsibilities "are explicitly mentioned in the Guidelines as being irrelevant for purposes of departure." See Talk I, 13 F.3d at 371. Although that holding is certainly not beyond challenge, see Koon, 116 S. Ct. at 2045 (holding that "family ties and responsibilities" are "discouraged factor" permitting departure in exceptional circumstances), Talk's § 2255 motion does not appear to take issue with Talk I's ruling on this point. Under the law of the case, therefore, the district court was bound at resentencing to refuse to consider his family circumstances.

## IV

28 U.S.C. § 2255 permits a collateral attack on grounds that a "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. [1] Talk argues that his sentence was imposed in violation of 18 U.S.C. § 3742, which Koon construes as requiring deferential appellate review of downward departures, and in violation of his Fifth Amendment right to due process. We consider his statutory claim first.

### A

---

[1] Relief under § 2255 is available on other grounds—for example, if "the sentence was in excess of the maximum authorized by law," 28 U.S.C. § 2255—but Talk does not invoke these alternatives.

- 9 -

Talk asserts that he is entitled to relief under 28 U.S.C. § 2255 because his sentence was imposed in violation of the laws of the United States. But not every violation of a statute can be remedied by motion under § 2255. Rather, such error will only be cognizable when it "qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Knox v. Wyoming Dep't of Corrections State Penitentiary, 34 F.3d 964, 968 (10th Cir. 1994) (quoting Reed v. Farley, 512 U.S. 339, 348 (1994)). [2] A nonconstitutional, nonjurisdictional error must "present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Hill v. United States, 368 U.S. 424, 428 (1962) (quotation omitted). This heightened showing applies because "there is no basis . . . for allowing collateral attack 'to do service for an appeal.'" United States v. Timmreck, 441 U.S. 780, 784 (1979) (quoting Sunal v. Large, 332 U.S. 174, 178 (1947)).

The contours of the "fundamental defect" exception have not been extensively mapped. As the First Circuit has noted, the Supreme Court has only considered whether claims of nonconstitutional, nonjurisdictional error were

---

[2] Although both Reed and Knox are 28 U.S.C. § 2254 cases, they are germane here because "'§ 2255 was intended to mirror § 2254 in operative effect,' at least when alleged statutory violations are the source of a petitioner's collateral attack." Knox, 34 F.3d at 967 (quoting Reed, 512 U.S. at 353).

- 10 -

properly brought under 28 U.S.C. § 2255 on four occasions.     See Knight v. United States , 37 F.3d 769, 773 (1st Cir. 1994).  Three such errors were found not to be actionable: denial of allocution in sentencing in violation of Fed. R. Crim. P. 32(a), see Hill, 368 U.S. at 428; "technical" error under Fed. R. Crim. P. 11 in the procedure for taking a guilty plea,     see Timmreck , 441 U.S. at 784-85; and a subsequent policy change by the United States Parole Commission that frustrates the subjective expectations of a sentencing court,     see United States v. Addonizio   , 442 U.S. 178, 184-90 (1979).  In only one case, where a subsequent change in substantive law made a defendant's formerly illegal behavior lawful, has the Supreme Court allowed such a claim to be brought under § 2255.     See Davis, 417 U.S. at 346.

The courts of appeals have made little effort to delineate the line that separates cases such as    Hill and Davis , in large part because procedural default bars so many nonconstitutional, nonjurisdictional claims from substantive review under § 2255.  Although numerous cases have held that sentencing errors typically do not to give rise to a miscarriage of justice sufficient to excuse procedural default,   see, e.g. , United States v. Richards   , 5 F.3d 1369, 1370-71 (10th Cir. 1993) (holding successive § 2255 motion procedurally barred because petitioner failed to raise sentencing error on direct appeal and failed to show fundamental miscarriage of justice), very few cases have had any occasion to

determine which sentencing errors are "fundamental" and therefore correctable under § 2255, and which are not. Because the government has passed up any argument that Talk has procedurally defaulted, we are presented with the question of whether Talk's claimed error is one that is "fundamental" in nature.

In United States v. Gattas, 862 F.2d 1432 (10th Cir. 1988), we held that a sentencing court's violation of Fed. R. Crim. P. 32(c)(3)(D) is sufficiently fundamental to support a claim under § 2255. Id. at 1434. Gattas concerns the second sentence of Rule 32(c)(3)(D), which requires a sentencing court to make a written record of its resolution of contested matters concerning the presentence report and to attach the record to the report. Id. at 1433. [3] Even though that

_____

[3] The full text of Rule 32(c)(3)(D), as it read at the time relevant to consideration in Gattas, is as follows:

> "If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (I) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission."

Gattas, 862 F.2d at 1433 n.2 (quoting Fed. R. Crim. P. 32(c)(3)(D)). The Rule has since been amended on a number of occasions. The text of Rule 32(c)(3)(D), albeit somewhat revised, now appears at Fed. R. Crim. P. 32(c)(1).

requirement is "ministerial," it is nonetheless "a significant enough part of the sentencing process to support an action under Section 2255."  Id. at 1434.  A presentence report "may have an important influence on a defendant's classification in a prison, his ability to obtain furloughs, the treatment programs provided to him, and his parole determinations."  Id.  Gattas concludes that "transmission of an accurate presentence report, which includes a written record of the sentencing judge's resolution of contested matters in the report, is vitally important to the post-sentencing lives of criminal defendants," and consequently "jurisdiction under Section 2255 is appropriate to correct violations of . . . Rule 32(c)(3)(D)."  Id.

If an error in compiling "the central document in the correctional process" is actionable under § 2255,  id., then an error that results in a significantly miscalculated sentence may be as well.  See, e.g. , United States v. Ammar , 919 F.2d 13, 15-16 (3d Cir. 1990) (holding that violation of Fed. R. Crim P. 43(a) at sentence revision raises "possibility of error as to the length of sentence that was intended [which is] a fundamental defect cognizable under 28 U.S.C. § 2255").  Appellant contends that if  Talk II  had applied the correct standard of appellate review of downward departures, his offense level would have been at least nine levels below 31.  Instead of his 108-month sentence, Talk would have received no more than 51 months, less than half his current term of imprisonment.

Under the unusual circumstances of this case, we may assume—without deciding—that an error of this magnitude falls within the terms of Gattas. Because we ultimately conclude that Talk cannot substantiate the error he alleges, there is no need to resolve conclusively whether such error is actionable by means of a § 2255 petition.

**B**

Before reaching the merits of Talk's claim, however, we must also consider the government's contention that Koon cannot be applied retroactively to Talk II in light of Teague v. Lane, 489 U.S. 288 (1989). [4] Teague holds that, with certain exceptions inapplicable to the present case, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. Thus, Teague plainly applies only to rules that are both new and constitutional. Cf. Bousley v. United States, 1998 WL 244204, at *5 (May 18, 1998) (holding that Teague does not bar § 2255 petition for retroactive application of Bailey v. United States, 516 U.S. 137 (1995), because "[t]he only constitutional claim made" is not new).

---

[4] Talk II was decided on February 7, 1995. Koon was decided on June 13, 1996.

- 14 -

Talk's statutory claim asks us to apply a rule that is neither new nor constitutional. [5] Koon's prescriptions for appellate review are based on an interpretation of 28 U.S.C. § 3742, a congressional enactment in force at all times during Talk's sentencing. See Koon, 116 S. Ct. at 2046 (interpreting statutory directive, 18 U.S.C. § 3742(e)(4), that courts of appeals should "give due deference to the district court's application of the guidelines to the facts"). These prescriptions are not constitutional. See United States v. McLamb, No. 95-6773, 1996 WL 79438, at *3 n.4 (4th Cir. 1996) (stating that "Teague does not bar the retroactive application on collateral review of a decision concerning the reach of a federal statute . . . or . . . a sentencing guideline"); accord Oliver v. United States, 90 F.3d 177, 179 n.2 (6th Cir. 1996). Nor is Koon's rule new. It is well-established that a "statute cannot mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards." United States v. Shelton, 848 F.2d 1485, 1489 (10th Cir. 1988) (quotation omitted). Koon neither "imposes a new obligation on the States or the Federal government," Teague, 489 U.S. at 301, nor, as a case based squarely on statutory interpretation, does it announce a result not already "dictated" by existing law, id.; see also Dodson v.

---

[5] We therefore have no cause to consider petitioner's other objections to Teague's application, such as his assertion that Teague does not apply to § 2255 proceedings.

- 15 -

Zelez, 917 F.2d 1250, 1255 (10th Cir. 1990) (finding rule not new for Teague purposes where dictated by precedent and statutory law).

C

At the time Talk II was decided, this court reviewed guideline departures under a three-tiered standard: (1) de novo review of whether the circumstances of the case present a factor not adequately taken into consideration by the Sentencing Commission which would justify departure; (2) clearly erroneous review of the factual determinations underlying the decision to depart; and (3) reasonableness review of the degree of departure. See United States v. Maldonado-Campos, 920 F.2d 714, 719-20 (10th Cir. 1990). In effect Koon split the first de novo inquiry in two. Plenary appellate review still applies to the question of whether the factual circumstances supporting departure are permissible departure factors under any circumstances. But a district court's resolution of whether the particular factual circumstances of a case make it atypical and warrant departure is essentially factual, and is reviewed for abuse of discretion. See United States v. Collins, 122 F.3d 1297, 1303-05 (10th Cir. 1997). The second and third steps of Maldonado-Campos remain unaltered. See id. at 1303. All four steps of the departure review are subject to a unitary abuse of discretion standard. Id.

In reversing the nine-level downward departure awarded by the district court, Talk II holds that "Talk's criminal history does not form a valid basis for departure. . . . Finally, when the events surrounding the rape are fully considered, they do not suggest a single act of aberrant behavior." Talk II, 1995 WL 66583, at *1 (citations omitted).

Even if these determinations were made under the first de novo step of Maldonado-Campos review, that alone would not establish a conflict with Koon, which permits an appeals court to determine de novo that the factors cited were not permissible grounds for departure. But if Talk II determined de novo that the factors cited by the district court were not so atypical as to take the case out of the heartland of the guidelines, then that would likely be inconsistent with Koon because the determination of whether factors warrant—rather than permit—downward departure is in most cases for the district court to make, and we must review such a determination deferentially. See Collins, 122 F.3d at 1303. There will, however, be some cases in which an appellate court should determine de novo whether an allegedly special circumstance is of a kind that permits departure. See id. at 1303 n.4 (citing United States v. Rivera, 994 F.2d 942, 951 (1st Cir. 1993)). In such cases, the appellate court "will have to perform the quintessentially legal function of interpreting a set of words, those of an individual guideline, in light of their intention or purpose, in order to identify the

- 17 -

nature of the guideline's 'heartland' (to see if the allegedly special circumstance falls within it)." Rivera, 994 F.2d at 951. With these admittedly awkward distinctions in mind, see United States v. Archuleta, 128 F.3d 1446, 1449 (10th Cir. 1997) ("It is not always an easy matter to determine where de novo review ends and deference begins."), we review the departure factors considered in Talk II.[6]

We may readily dispose of any departure based on Talk's limited criminal history. As Koon makes clear, a sentencing court abuses its discretion when it departs downwards on grounds that Criminal History Category I, which is applicable to first-time offenders such as Talk, overstates the seriousness of a defendant's criminal history or likelihood for recidivism. See Koon, 116 S. Ct. at 2052-53 (citing 1992 U.S.S.G. § 4A1.3). Inasmuch as the district court premised

_____

[6] We need not examine the court's consideration of family ties and responsibilities because Talk I remains binding on that point. See supra section III.C. In any case, we are unpersuaded that Talk II erred on this point. Family ties and responsibilities are a "discouraged" departure factor, see Archuleta, 128 F.3d at 1449, which means that "the court should depart only if the factor is present to an exceptional degree . . . ," Koon, 116 S. Ct. at 2045. The district court made no finding of exceptionalism with regard to Talk's family circumstances; in fact, it simply noted Talk's "strong family and community ties and obligations." Accordingly, we think it likely that the Talk II court rejected these grounds for departure on a purely legal basis—that absent a finding of exceptionalism, family circumstances are a legally impermissible basis for departure. Cf. United States v. Rodriguez-Velarde, 127 F.3d 966, 968 (10th Cir. 1997) ("Ordinary family responsibilities can be very great.") (quoting United States v. Dyce, 91 F.3d 1462, 1466 (D.C. Cir. 1996)). Such a legal determination is appropriately made de novo.

departure on these grounds, it was in error—whatever the standard of appellate review employed.

Talk II 's review of the decision to depart on the basis of "aberrational behavior," however, is not so readily affirmed. The district court held that "the criminal conduct in this case was a single act of aberrant behavior in that the act was spontaneous and thoughtless, and no planning was involved." Order Pursuant to Government's Motion to Reconsider Downward Departure, at 1. Talk II rejected this finding, concluding instead that "when the events surrounding the rape are fully considered, they do not suggest a single act of aberrant behavior." Talk II , 1995 WL 66583, at *1.

The aberrance of a criminal act is an encouraged factor for departure. See United States Sentencing Guidelines Manual, ch. 1, pt. A4(d) (policy statement), at 8 (1997) (stating that "single acts of aberrant behavior . . . may justify probation at higher offense levels through departures"); see also United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991) (relying on this provision to justify downward departure). Under Koon, a district court is legally not authorized to depart on the basis of aberrance if an applicable guideline already takes it into account. Koon, 116 S. Ct. at 2045. Because none does here, Talk II 's rejection of this departure factor was not based on a legal determination. Rather, it must have been based on a disagreement with the district court's conclusion that Talk's

crime was sufficiently aberrational to remove the case from the heartland of the guidelines. As Koon and Collins both make abundantly clear, that is a factual judgment by the district court which we review deferentially.

Ultimately, however, Talk cannot establish that Talk II failed to make this determination under an appropriately deferential standard of review. We cannot, given the contrary law then prevailing, conclude with certainty that the Talk II court applied Koon's second step correctly. However, in rejecting the departure for aberrational behavior, Talk II may well have meant that the factual findings underlying the district court's finding of aberrance were clearly erroneous. [7] In other words, Talk II may have rejected the aberrational behavior departure under the second step of Maldonado-Campos. See Maldonado-Campos, 920 F.2d at 720; cf. Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997) ("We assume that the district court performed its review function properly in the absence of evidence to the contrary."). As Talk's § 2255 motion contains no grounds to dispute such a finding, we must conclude that Talk has not conclusively established any errors at Talk II that would require us to grant his motion.

---

[7] In this regard, we note that both the government and Talk urged the Talk II court to apply a "clearly erroneous" standard of review to the aberrance determination. See No. 94-2120, Appellant's Br. at 14-16; Appellee's Br. at 8, 12; Appellant's Reply Br. at 6 ("We argue, however, that the district court here was clearly erroneous in concluding that defendant's violence against the victim was completely unprecedented, spontaneous, and unplanned.").

**D**

Talk cannot establish a violation of the "laws of the United States" on direct appeal of his sentence. By the same token, his inability to establish prejudice means that his constitutional claims must fail as well.

**AFFIRMED** .

No. 97-2088,   United States v. Talk

**BRISCOE** , Circuit Judge, concurring:

I concur in the majority's affirmance of the district court's denial of Talk's 28 U.S.C. § 2255 motion to vacate his sentence.  I write separately because I conclude Talk has not asserted a cognizable basis for collateral attack of his sentence under the limited scope of § 2255.

Grounds for successful collateral attacks under § 2255 are limited far beyond errors justifying reversal on direct appeal.       United States v. Blackwell   , 127 F.3d 947, 954 (10th Cir. 1997).  In particular, relief is warranted under § 2255 only if the alleged error is "jurisdictional," "constitutional," "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."       Hill v. United States  , 368 U.S. 424, 428 (1962).

Reduced to its essence, Talk's argument is that this court, in reviewing the sentence on appeal in    Talk II , applied a de novo standard rather than an abuse of discretion standard in determining whether the factors cited by the district court warranted departure from the sentencing guidelines.  Talk does not argue, nor can he argue, this alleged error was jurisdictional.  Further, I am not persuaded the alleged error is constitutional.  Although a defendant has certain constitutional rights in relation to sentencing (e.g., right to be sentenced based on reliable information,  United States v. Robinson    , 30 F.3d 774, 787 (7th Cir. 1994); right

not to be sentenced while incompetent, United States v. Soldevila-Lopez, 17 F.3d 480, 490 (1st Cir. 1994)), I have found no case recognizing a constitutional right to a particular standard of appellate review, nor have I found a case recognizing a constitutional right to be sentenced by a particular entity (e.g., district court vs. appellate court). See generally Field v. Sheriff of Wake County, 831 F.2d 530, 536 (4th Cir. 1987) (no constitutional right to be sentenced by jury); United States v. Fitzpatrick, 548 F.2d 105, 108-09 (3d Cir. 1977) (no constitutional right to be sentenced by trial judge).

This leaves only the possibility that Talk has asserted a viable statutory claim. The majority acknowledges the standards for statutory claims announced in Hill, but ultimately relies on United States v. Gattas, 862 F.2d 1432 (10th Cir. 1988), which held a sentencing court's failure to make a written record of its resolution of contested matters concerning the presentence report and attach the record to the report, as required by Fed. R. Crim. P. 32(c)(3)(D), was sufficiently fundamental to support a claim under § 2255. The conclusion in Gattas rested on the fact that presentence reports can heavily influence "a defendant's classification in prison, his ability to obtain furloughs, the treatment programs provided to him, and his parole determinations," and thus are "vitally important to the post-sentencing lives of criminal defendants." Id. at 1434. I am not persuaded the "vitally important to the post-sentencing lives of criminal

defendants" statement in  Gattas , focused as it was on the particular facts in that case, was intended to operate as a standard in future cases for determining whether a cognizable § 2255 claim has been asserted.  In fact, I believe the adoption of this statement as a standard for determining the viability of a statutory claim is erroneous in that it waters down the "fundamental miscarriage of justice" and "omission inconsistent with the rudimentary demands of fair procedure" standards established long ago by the Supreme Court.     See Hill, 368 U.S. at 428.  I conclude Talk has not alleged a viable statutory claim under these stringent standards.

Although the majority suggests application of a de novo standard rather than an abuse of discretion standard would have "result[ed] in a significantly miscalculated sentence," I disagree.  At worst, such an error would have resulted in this court substituting its judgment for that of the district court with respect to whether particular factors warranted a downward departure from the sentencing guidelines.  In my opinion, such a result constitutes neither "a fundamental defect which inherently results in a complete miscarriage of justice," nor "an omission inconsistent with the rudimentary demands of fair procedure."     Id.