

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-2000

# United States v. Cepero

Precedential or Non-Precedential:

Docket 99-3047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Cepero" (2000). *2000 Decisions.* Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 17, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3047

UNITED STATES OF AMERICA

v.

ANGEL CEPERO
a/k/a Angel Villar-Cepero
a/k/a Mosquito
Angel Cepero,
      Appellant.

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 97-cr-00110-3)
District Judge: Honorable William W. Caldwell

Argued March 6, 2000

Before: SCIRICA, ALITO and ALDISERT, Circuit  Judges.

Re-Argued May 24, 2000

Before: BECKER, Chief Judge, SLOVITER, MANSMANN,
GREENBERG, SCIRICA, NYGAARD, ALITO, ROTH,
McKEE, RENDELL, BARRY, FUENTES and ALDISERT,
Circuit Judges.

(Filed: August 17, 2000)

      Theodore Sliwinski, Esq. (argued)
      45 East River Road
      East Brunswick, NJ 08816

       ATTORNEY FOR APPELLANT,
      Angel Cepero

David M. Barasch
United States Attorney
Theodore B. Smith, III (argued)
Assistant United States Attorney
Kim Douglas Daniel
Assistant United States Attorney
Federal Building
228 Walnut Street
Harrisburg, PA 17108

 ATTORNEYS FOR APPELLEE,
United States of America

Peter Goldberger
Law Offices of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003-2276

 ATTORNEY FOR AMICUS CURIAE,
National Association of Criminal
Defense Lawyers

OPINION OF THE COURT

ALDISERT, Circuit Judge:

We must decide whether the Antiterrorism and Effective Death Penalty Act of 1996 precludes our review of Appellant's unsuccessful S 2255 motion to correct his sentence, notwithstanding the District Court's issuance of a certificate of appealability under 28 U.S.C.S 2253. Appellant contends that the District Court erred by sentencing him under U.S.S.G. S 2D1.1 because the Government did not prove the substance involved in his criminal offenses was crack cocaine. The court order declared: "A certificate of appealability on the crack-enhancement is granted. It is denied on all other issues." App. at 113a. The Government now moves for dismissal of this appeal on the grounds that the District Court erroneously issued the certificate of appealability because Cepero did not make a "substantial showing of the denial of a constitutional right" as required under S 2253(c)(2) so as to invoke our limited power to review the denial of his

2

S 2255 petition. We will grant the Government's motion to dismiss.

I.

In April 1997, Angel Cepero was indicted along with two co-defendants for conspiracy to distribute and possess with intent to distribute "cocaine and more than 50 grams of cocaine base, a/k/a `crack' cocaine" in violation of 21 U.S.C. SS 841(a) and 846. The indictment listed the overt acts committed in furtherance of the conspiracy as the delivery and sale of "cocaine base," but did not specifically mention "crack cocaine."[1]

An assistant federal public defender was appointed as Cepero's counsel, and in June and July 1997 filed two pretrial motions, both of which referred to the substance at issue as "crack cocaine." Shortly thereafter, Cepero executed a plea agreement in which he agreed to plead guilty to the conspiracy count, which paragraph 1 identified as "conspiracy to distribute more than 5 grams of cocaine base." In pertinent part, paragraph 1 stated also that the "maximum penalty for the offense is imprisonment for a period of 40 years [and] a fine of $2,000,000," which corresponds to the maximum penalties for crack cocaine under 21 U.S.C. S 841(b)(1)(B)(iii). Paragraph 9 of the plea agreement stipulated that his offense conduct "involved no less than 35 but no more than 50 grams of cocaine base." Cepero and his public defender reviewed and signed the agreement.

Three days later a guilty-plea hearing was held, during which the sentencing court, the prosecutor and the public defender all referred to the offense as involving either cocaine or cocaine base. The prosecutor noted the statutory

_____

1. In 1993 the Sentencing Commission amended the Guidelines to include the following definition of cocaine base:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. S 2D1.1.

range of penalties as being from five to 40 years and a maximum fine of $250,000, based on the agreement that Cepero's conduct involved 35 to 50 grams of cocaine base. The prosecutor summarized the Government's case and consistently referred to the drug transaction as involving cocaine or cocaine base. Cepero agreed that this was an accurate account of his involvement and pled guilty to the conspiracy charge.

The presentence report identified the substance at issue as "crack cocaine." The report concluded that Cepero's base offense level was 30, derived from U.S.S.G. S 2D1.1 for offenses involving at least 35 grams but less than 50 grams of cocaine base. After a two point deduction for acceptance of responsibility, his offense level was 28, and his criminal history category was set at III, which resulted in a guideline range of 97 to 121 months. Neither the Government nor the defendant objected to the report. On November 2, 1997, Cepero was sentenced to 97 months imprisonment and he did not appeal.

On September 20, 1998, Cepero filed his pro se habeas petition in the District Court pursuant to 28 U.S.C.S 2255 and alleged inter alia that the Government failed to prove at sentencing that the substance in question was crack cocaine and not merely cocaine powder, which carries a lesser sentence.[2] The court denied his petition by memorandum order but granted him a certificate of appealability under S 2253(c) with respect to the "crack-enhancement" issue--i.e., whether the Government adequately proved at sentencing that he had conspired to distribute crack cocaine. Cepero timely filed his notice of appeal and thereafter the Government moved to dismiss for want of subject-matter jurisdiction. We appointed counsel and referred the matter to a merits panel, to which both parties submitted briefs and argued their positions.

_____

2. Section 2D1.1 of the Sentencing Guidelines directs a sentencing court to use the same base offense level for a crime involving 1.5 kilograms or more of cocaine base, or crack cocaine, that it would use for a crime involving 150 kilograms or more of powdered cocaine. Thus, an enhanced sentence exists in crimes involving crack cocaine vis-a-vis powdered cocaine.

4

After argument, we granted re-hearing en banc to decide whether the District Court erroneously granted Cepero a certificate of appealability under 28 U.S.C. S 2253(c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to the court's factual findings. Rios v. Wiley, 201 F.3d 257, 262 (3d Cir. 2000).

II.

Before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner in federal custody who was denied relief by a district court on a S 2255 petition could appeal to the court of appeals without obtaining a certificate of probable cause. See 28 U.S.C. S 2253 (1995) (pre-AEDPA language); United States v. Eyer, 113 F.3d 470, 472 (3d Cir. 1997). By contrast, a petitioner in state custody challenging his detention could not appeal the denial of his petition "unless the justice or judge who rendered the order or a circuit justice or judge issue[d] a certificate of probable cause." 28 U.S.C. S 2253 (1995) (pre-AEDPA language); see Eyer, 113 F.3d at 472.

Section 102 of the Antiterrorist and Effective Death Penalty Act amended the jurisdictional dimension ofS 2253 to provide:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

5

> (3) The certificate of appealability under paragraph (1)
> shall indicate which specific issue or issues satisfy the
> showing required by paragraph (2).

28 U.S.C. S 2253(c)(1)-(3) (as amended Apr. 24, 1996) (emphasis added). The AEDPA thus replaced certificates of probable cause with "certificates of appealability" and required prisoners in federal custody to obtain certificates of appealability before appealing from the denial of their S 2255 petitions.

In our prior decisions interpreting the amended version of S 2253, we have held that, notwithstanding the ambiguous language of the statute which seems to empower only circuit court judges with the authority to grant certificates of appealability, see S 2253(c)(1), the district court judge who denies the prisoner's habeas petition is also authorized to certify issues for appeal. See Eyer, 113 F.3d at 472-473; accord Lozada v. United States, 107 F.3d 1011, 1016 (2d Cir. 1997) ("We therefore uphold the authority of district judges to issue [certificates of appealability], at least in section 2254 cases."); United States v. Asrar , 108 F.3d 217, 218 (9th Cir. 1997); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1066-1073 (6th Cir. 1997); Hunter v. United States, 101 F.3d 1565, 1573-1577 (11th Cir. 1996) (en banc).

III.

We recognize that several courts of appeals have passed on the question we decide today--whether we have jurisdiction under S 2253(c) to review the denial of a S 2255 petition where the Government challenges the validity of a certificate of appealability issued by a district court. In United States v. Eyer, we assumed jurisdiction to review the denial of a S 2255 petition notwithstanding the questioned validity of the certificate of appealability, but in that case the Government opposed only the power of the district court to issue certificates of appealability and took the position that, if the district court was authorized to certify issues for appeal under S 2253(c), then the case should be decided on the merits. We concluded that district court judges were authorized to issue certificates of appealability

and thereafter assumed jurisdiction. Nevertheless we recognized the lingering question of whether the petitioner made a "substantial showing of the denial of a constitutional right."

> [Petitioner] raises questions . . . involving issues of statutory construction. Therefore, it is possible that [he] does not raise an issue involving a constitutional right.

> Here [ ] we avoid the procedural point because the government . . . . took the position that if the district court is empowered to issue certificates of appealability under section 2253(c)(1), we should decide this case on the merits. Thus, the determination of the meaning of "constitutional right" in section 2253(c)(2) is not necessary to the disposition of this appeal.

> In reaching our result, we have not disregarded our practice of examining our jurisdiction before reaching the merits of an appeal, and we recognize the possibility that the procedural problems we have identified [i.e., petitioner's possible failure to raise issues implicating constitutional rights] could be considered jurisdictional. Instead, we are applying the settled principle that an appellate court, confronted by a difficult jurisdictional or quasi-jurisdictional question, may forego its resolution if the merits of the appeal are, as here, straightforward and easily resolved in favor of the party or parties to whose benefit the objection to jurisdiction would redound.

Eyer, 113 F.3d at 474 (internal quotation marks and citations omitted). This practice of exercising "hypothetical jurisdiction" is neither new nor specific to certificates of appealability. See generally Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 93-94 (1998) (collecting cases). Nevertheless, in 1998 the Supreme Court largely rejected this custom. See id. at 94. We recently discussed the Court's teachings in Steel Co. vis-a-vis our past exercise of hypothetical jurisdiction in Eyer:

> We recognize that the Supreme Court in Steel Co. [ ] disapproved the practice of a court of appeals, such as in Eyer [ ], avoiding difficult jurisdictional questions

when a merits determination would favor the party who would benefit if it declined to exercise jurisdiction. But if we were to determine that we will not issue a certificate of appealability because [petitioner] has not demonstrated that he is entitled to one under 28 U.S.C. S 2253(c)(3), then we would find that this court does not have jurisdiction to go forward in this appeal.

United States v. Williams, 158 F.3d 736, 741-742 (3d Cir. 1998). We continue to recognize that the Court's opinion in Steel Co. stands for the proposition that an Article III court may not assume subject-matter jurisdiction to reach the merits of an appeal.

Several of our sister courts of appeals have reached the merits of prisoners' appeals from unsuccessful S 2255 petitions based on the reasoning that S 2253(c)(2) is not jurisdictional in nature. In Young v. United States, 124 F.3d 794, 799 (7th Cir. 1997), cert. denied, 524 U.S. 928 (1998), the Court of Appeals for the Seventh Circuit held that an erroneously issued certificate of appealability satisfied the requirements of S 2253(c)(2) regardless of whether it was properly issued, reasoning as follows:

The certificate is a screening device, helping to conserve judicial (and prosecutorial) resources. . . Once a certificate has issued, however, the case proceeds to briefing and decision; the resources have been invested. It is too late to narrow the issues or screen out weak claims. Perhaps a motion to dismiss an appeal on the ground that a certificate was improperly issued would serve some function. But once the briefs have been written and the case heard, there is little point in scrutinizing the certificate of appealability. An obligation to determine whether a certificate should have been issued, even if the parties do not present this issue for decision--a step entailed by the conclusion that a proper certificate is a jurisdictional requirement--would increase the complexity of appeals in collateral attacks and the judicial effort required to resolve them, the opposite of the legislative plan. So we proceed to the merits as the parties have presented them.

8

Id. at 799.

The Court of Appeals for the Tenth Circuit reached the same conclusion and relied on the Young reasoning. See United States v. Talk, 158 F.3d 1064, 1065 (10th Cir. 1998), cert. denied, 525 U.S. 1164 (1999). Similarly, the Court of Appeals for the Second Circuit adopted this reasoning in Soto v. United States, 185 F.3d 48 (2d Cir. 1999), emphasizing that "the certificate is a screening device" and that it had previously intimated the same "gate-keeping" view of the certificate of appealability requirement in Lozada v. United States, 107 F.3d 1011, 1015 (2d Cir. 1997). It reasoned that "dismissing an appeal after a certificate of appealability has already issued would be of little utility; installing this Court as a gate keeper for the gate keeper would be redundant." Soto, 185 F.3d at 52.

IV.

The difficulty that we have with the approach of our sister courts of appeals is that they fail to recognize the precise jurisprudential nature of a certificate of appealability as defined in Hohn v. United States, 524 U.S. 236 (1998). The centerpiece of the reasoning of those courts is that a certificate is an administrative function, described as "a screening device, helping to conserve judicial (and prosecutorial) resources." Young, 124 F.3d at 799; see Talk, 158 F.3d at 1065, 1068; Soto, 185 F.3d at 52.3

The question for decision in Hohn was "whether the Court has jurisdiction to review decisions of courts of appeals denying applications for certificate of appealability," 524 U.S. at 238-239. To reach this question the Court first had to decide whether the issuance of a certificate of appealability by a court of appeals constituted a judicial function, rather than an administrative function, and was therefore subject to judicial review. The Court rejected the

_____

3. Because the Court of Appeals for the Seventh Circuit decided Young in August of 1997, it did not have the advantage of the Supreme Court's June 15, 1998 decision in Hohn. However, the Courts of Appeals for the Second and Tenth Circuits decided Soto (July 21, 1999) and Talk (Sept. 11, 1998), respectively, after Hohn was handed down.

9

notion advanced by the respondent in the case before it, and explicit in the reasoning in Young, Talk and Soto, that a certificate of appealability is merely a screening device. To the contrary, the Court held that decisions regarding applications for certificates of appealability are not merely an administrative function of the courts. Hohn , 524 U.S. at 245. The teaching of Hohn is clear and unambiguous:

> Decisions regarding applications for certificates of appealability, in contrast, are judicial in nature.  It is typical for both parties to enter appearances and to submit briefs at appropriate times and for the court of appeals to enter a judgment and to issue a mandate at the end of the proceedings, as happened here. . . . Construing the issuance of a certificate of appealability as an administrative function, moreover, would suggest an entity not wielding judicial power might review the decisions of an Article III court. In light of the constitutional questions which surround such an arrangement, see Gordon [v. United States, 117 U.S. Appx. 697, 702, 704 (1864)]; Hayburn's Case , 2 Dall. 409 (1792), we should avoid any such implication.

Hohn, 524 U.S. at 245–246 (emphasis added). The Court then proceeded to analogize Ex parte Quirin, 317 U.S. 1 (1942):

> We held the request for leave [to appeal] constituted a case in the district court over which the court of appeals could assert jurisdiction, even though the district court had denied the request. We reasoned, "[p]resentation of the petition for judicial action is the institution of a suit. Hence the denial of the district court of leave to file the petitions in these causes was the judicial determination of a case or controversy, reviewable on appeal to the Court of Appeals." 317 U.S., at 24.

Hohn, 524 U.S. at 246. The Court concluded by stating,

> the circumstance that the question before the court is a preliminary issue, such as the denial of a certificate of appealability or venue, does not oust appellate courts of the jurisdiction to review a ruling on the matter.

10

Id. at 248.

In view of the explicit language of the Court, we must reject the analysis of our sister circuits and decline the notion that this court is bound by the District Court's issuance of a certificate of appealability. The issuance of the certificate in the case before us is not merely an exercise of judicial gate-keeping, but rather, in the language of the Court, is "the judicial determination of a case or controversy, reviewable on appeal to the Court of Appeals." Hohn, 524 U.S. at 246 (quoting Quirin , 317 U.S. at 24). We now proceed into a review of the order granting the certificate of appealability.

V.

Our first task in our review is to address Section 102 of the Antiterrorist and Effective Death Penalty Act of 1996, which amended the jurisdictional dimension of S 2253:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. S 2253(c)(1)-(3) (emphasis added). It had been suggested that the use by Congress of the phrase "substantial showing of a denial of a constitutional right" was inadvertent, inasmuch as it intended to codify the teachings of Barefoot v. Estelle, 463 U.S. 880 (1983), a S 2254 case in which the Court used the expression

11

"substantial showing of the denial of a federal right." 463 U.S. at 893 (emphasis added). The denial of a federal right encompasses not only rights assured by the United States Constitution but also those based on federal statutes, including the Sentencing Guidelines.

Cepero advances two basic arguments, either of which he claims requires us to reject the plain language of "constitutional right" and hold that Congress intended the phrase to mean "federal right"--first, that the amended version of S 2253(c) does not mean what it says, because Congress in the AEDPA intended to codify the Court's holding in Barefoot, which used the expression "federal right," but mistakenly amended the statute to apply to only those issues implicating the denial of a "constitutional right"; second, that in Peguero v. United States, 526 U.S. 23 (1999), the Court considered the merits of a S 2255 appeal that did not implicate a constitutional right.

A.

We are satisfied that the Court has recently made clear that the use of the phrase "constitutional right" must be given effect. "Our task is to interpret the statute as best we can, not to second-guess the wisdom of the congressional policy choice . . . . Congress chose the language that requires us to decide as we do, and Congress is free to change it." Mansell v. Mansell, 490 U.S. 581, 594 (1989) (citation omitted). In Slack v. McDaniel, ___ U.S. ___, 120 S. Ct. 1595 (2000), the Court held:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack, 120 S. Ct. at 1604 (emphasis added). In so holding, the Court construed S 2253(c) as follows:

Under AEDPA, a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. S 2253(c). Except for substituting the word "constitutional" for the word "federal," S 2253 is a codification of the CPC [certificate of probable cause] standard announced in Barefoot v. Estelle. Congress had before it the meaning Barefoot had given to the words it selected; and we give the language found in S 2253(c) the meaning ascribed it in Barefoot, with due note for the substitution of the word "constitutional."

Slack, 120 S. Ct. at 1603 (emphasis added and citations omitted).

Prior to the Court's opinion in Slack, the Court of Appeals for the Tenth Circuit offered a similar analysis of the post-AEDPA version of S 2253(c):

By requiring an applicant for a certificate of probable cause to make a "substantial showing of the denial of a federal right," the Supreme Court in Barefoot ensured that appellate review of the federal habeas process should be limited to petitions that make a colorable showing of constitutional error. Although the Court used the word "federal," an applicant seeking a certificate of probable cause to appeal a district court's denial of a S 2254 petition for a writ of habeas corpus must demonstrate a substantial showing of constitutional error underlying the state conviction. We have always read the Barefoot standard to require a habeas petitioner to make a substantial showing of the denial of a federal constitutional right. Indeed, in the context of federal habeas review of a conviction entered in state court, it is the only intelligible reading.

Lennox v. Evans, 87 F.3d 431, 434 (10th Cir. 1996) (citations omitted), overruled on other grounds by United States v. Kunzman, 125 F.3d 1363 (10th Cir. 1997).

Because Congress' meaning of "constitutional" in S 2253(c)(2), as amended, is crucial to our analysis of our jurisdiction, it is helpful to examine the legislative history. The first legislative report on this bill, House Bill 665, was introduced by the House Judiciary Committee on February

13

2, 1995. At that time the bill contained no language amending the review provisions of S 2253. The second legislative report on the bill was filed four days later, on February 6, and again did not purport to amend S 2253. On February 8, 1995, the House Judiciary Committee introduced House Report 104-23, which accompanied House Bill 728. The House Report on this bill contained the following language:

> Section 2253 of title 28, United States Code, is amended to read as follows:
>
> . . . .
>
> (c) . . . . A certificate of probable cause may only issue if the petitioner has made a substantial showing of the denial of a Federal right. . . .

Sec. 102, H.R. Report No. 104-23 (1995) (emphasis added). This Report included also a section entitled "Background and Need for the Legislation," which provided:

> The bill also strengthens the certificate of probable cause requirement by providing (in proposed S 2253(c)) that a certificate may issue only on a substantial showing of the denial of a federal right. The bill thus enacts the standard of Barefoot v. Estelle, 463 U.S. 880 (1983). . . .

H.R. Report No. 104-23 ("Background and Need for the Legislation"). In March 1995, the Senate and House of Representatives considered various versions of the bill, and on December 5 and 6 the House and Senate Judiciary Committees respectively issued their final reports on the proposed legislation, neither of which contained language amending S 2253.

On April 15, 1996, House Conference Report No. 104-518, accompanied by S. 735, was passed. Both the Conference Report and the accompanying bill contained language amending S 2253(c). The new bill substituted "certificates of appealability" for certificates of probable cause, and limited issuance of these certificates to situations where petitioners have made a "substantial showing of a denial of a constitutional right." (emphasis added). Neither the Conference Report nor the

14

accompanying bill explained why the language ofS 2253(c)
referred to "constitutional" and not "federal" rights.
Congress passed this version of the bill, known as the
Antiterrorism and Effective Death Penalty Act (AEDPA),
Pub. L. No. 104-132, 110 Stat. 1214 (1996), which the
President signed into law on April 24, 1996.

B.

Notwithstanding AEDPA's limited legislative history on
this point, it is clear that Congress by amendingS 2253
intended to codify in part the Court's holding in Barefoot v.
Estelle, 463 U.S. 880 (1983); see H.R. Report No. 104-23
("Background and Need for the Legislation"). In Barefoot,
the Court granted certiorari to determine whether the Court
of Appeals for the Fifth Circuit erred in refusing to stay a
state petitioner's death sentence under a S 2254
proceeding. Id. at 888. Reviewing the procedural actions of
the court of appeals, the Court outlined the grounds for
appealing the denial of a S 2254 petition:

> First. Congress established the requirement that a
> prisoner obtain a certificate of probable cause to appeal
> in order to prevent frivolous appeals from delaying the
> States' ability to impose sentences, including death
> sentences. The primary means of separating
> meritorious from frivolous appeals should be the
> decision to grant or withhold a certificate of probable
> cause. . . . We agree with the weight of opinion in the
> Courts of Appeals that a certificate of probable cause
> requires petitioner to make a "substantial showing of
> the denial of [a] federal right." Stewart v. Beto, 454
> F.2d 268, 270, n.2 (5th Cir. 1971), cert. denied , 406
> U.S. 925 (1972).

Barefoot, 463 U.S. at 893 (alteration in original) (footnote
omitted) (citing Ramsey v. Hand, 309 F.2d 947, 948 (10th
Cir. 1962); and Goode v. Wainright, 670 F.2d 941 (11th Cir.
1982)).

There is no doubt that the current version of S 2253(c)(2)
codified the Court's holding in Barefoot that a petitioner
must make a "substantial showing." Congress, however,
made a significant change to the Barefoot standard,

15

"substituting the word `constitutional' for the word `federal.' " Slack, 120 S. Ct. at 1603. The term "constitutional right" means something very different from the term "federal right," and because we must assume that Congress "means in a statute what it says," Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992), we give effect to the change.

It must be emphasized that it makes no difference whether "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" described in S 2253(c)(1)(A) emanates from a proceeding brought under S 2254 or S 2241(c)(3) (a prisoner in custody "in violation of the Constitution or laws or treaties of the United States"). Under either proceeding, a state prisoner must obtain a certificate of appealability--that is, "make a substantial showing of the denial of a constitutional right" under S 2253(c)(2)--before appealing from any aspect of the state-ordered detention under S 2253(c)(1)(A). See Montez v. McKinna, 208 F.3d 862, 869 (10th Cir. 2000) ("[T]his court reads S 2253(c)(1)(A) as applying whenever a state prisoner habeas petition relates to matters flowing from a state court detention order[, including challenges underS 2254 and S 2241.]"). Federal prisoner appeals fromS 2241 proceedings, however, are not governed by 2253's certificate of appealability requirement. See 28 U.S.C.S 2253(c)(1)(B) (applying the certificate of appealability requirement to federal prisoner appeals from "the final order in a proceeding under section 2255"); see also Sugarman v. Pitzer, 170 F.3d 1145, 1146 (D.C. Cir. 1999) ("We hold that a COA is not required for federal prisoner S 2241 appeals."); Ojo v. INS, 106 F.3d 680, 681 (5th Cir. 1997). 4

This is not to suggest that Congress' amendment of S 2253(c)(2) was without problems. We confront the specter that Congress has now differentiated between the type of

_____

4. It bears emphasis that S 2241 is not involved in this case because Appellant brought this action as a "Motion under 28 U.S.C. S 2255 to Vacate, Set Aside or Correct Sentence by a person in Federal Custody." App. at 65a. He did not argue otherwise in the district court or in his briefs to this court. See Appellant's Br. at iv, Table of Authorities.

16

S 2255 petition that may be filed in district court and the type that may be appealed to this court. Cf. United States v. Gordon, 172 F.3d 753, 754 (10th Cir. 1999); Young, 124 F.3d at 799. Section 2255 petiioners may allege and have adjudicated non-constitutional issues in district court:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws  of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . .

28 U.S.C. S 2255 (emphasis added); see Gordon, 172 F.3d at 754. However, the courts of appeals under the post-AEDPA version of S 2253(c)(2) have limited jurisdiction over unsuccessful S 2255 petitions. Hohn, 524 U.S. at 240; see Young, 124 F.3d at 799 ("If the district court denies a [S 2255] petition based on a statutory issue, S 2253(c)(2) precludes an appeal."). To the ad terrorem  argument that the defendant is thereby totally denied the opportunity to appeal nonconstitutional issues, the short answer is that Congress has indicated that these issues must be presented in the direct appeal from the conviction.

C.

We now address the argument that the Court sub silentio has already interpreted S 2253(c)(1)-(3) and has held that the phrase "denial of a constitutional right" may be interpreted to embrace non-constitutional issues such as interpretation of the Federal Rules of Criminal Procedure. See Peguero v. United States, 526 U.S. 23 (1999).

Although there is no discussion or reference made in the Peguero opinion that contemplates the precise issue presented here, Appellant here argues that the issue of jurisdiction under S 2253(c) was before the Peguero Court because the Government indirectly raised the issue in a footnote in its brief, when it stated:

17

> The government acquiesced in the granting of a certificate of appealability. [ ] In fact, however, the district court erred in issuing a certificate. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. (c)(2) (Suppl. II 1996), and the Rule 32 error on which the petitioner sought the certificate is not of constitutional dimension.

Brief for Respondent at *6 n.5, Peguero, 1998 WL 848085.

There are two answers to this contention. First, the footnote clearly states that the "government acquiesced in the granting of the certificate." Having acquiesced in the granting of the certificate in the court below, it may not be contended that the Government was raising a serious jurisdictional argument before the Supreme Court. Second, and much more fundamental, the Court consistently teaches that an opinion that does not refer to or substantially treat the jurisdictional argument does not have the strong bite of binding precedent. See e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119 (1984).

We are of the view that the teachings of Peguero do not address the precise issues presented in this case. There the Court did not have before it the issue of whether a certificate of appealability could issue for other than a claim of constitutional right. Specifically, the first sentence of the Court's opinion stated the question for decision:

> We granted certiorari to resolve a Circuit conflict over whether a district court's failure to advise a defendant of his right to appeal as required by the Federal Rules of Criminal Procedure provides a basis for collateral relief even when the defendant was aware of his right to appeal when the trial court omitted to give the advice.

Peguero, 526 U.S. at 963. That was the only issue before the court and the teachings of that case must be limited to the precise issue decided. "[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue

18

before us." Pennhurst, 465 U.S. at 119 (quoting Hagans v. Lavine, 415 U.S. 528, 533 n.5 (1974)); see United States v. More, 7 U.S. 159, 172 (1805) ("No question was made, in that case, as to the jurisdiction. It passed sub silentio, and the court does not consider itself as bound by that case.") (Marshall, C.J.).

In Edelman v. Jordan, 415 U.S. 651 (1974), the Court referred to a series of cases in which it reached the merits of challenges to federal welfare regulations brought by welfare recipients. In meeting for the first time whether the Eleventh Amendment precluded federal court jurisdiction to grant retroactive relief, the Court noted that it had previously decided the cases on the merits without meeting the question of jurisdiction. It referred also to Shapiro v. Thompson, 394 U.S. 618 (1969), where "the Eleventh Amendment objection to such retroactive relief was actually presented to this Court in a case which was orally argued." Edelman, 415 U.S. at 670. Significantly, the Court explained why Shapiro and three other cases decided by the Court on the merits could not be interpreted as sub silentio deciding the issue of jurisdiction:

> This Court, while affirming the judgment [in Shapiro], did not in its opinion refer to or substantially treat the Eleventh Amendment argument. Nor, of course, did the summary dispositions of the three District Court cases contain any substantive discussion of this or any other issues raised by the parties.
>
> This case, therefore, is the first opportunity the Court has taken to fully explore and treat the Eleventh Amendment aspects of such relief in a written opinion. . . . Having now had the opportunity to more fully consider the Eleventh Amendment holdings of those cases after briefing and argument, we disapprove the Eleventh Amendment holdings of those cases to the extent that they are inconsistent with our holding today.

Id. at 670–671.

The Court had a similar issue before it in Hagans v. Lavine, and noted:

19

> In none of these cases was the jurisdiction issue
> squarely raised as a contention in the petitions for
> certiorari, jurisdictional statements, or briefsfiled in
> this Court. Moreover, when questions of jurisdiction
> have been passed on in prior decisions sub silentio,
> this Court has never considered itself bound when a
> subsequent case finally brings the jurisdictional issue
> before us. . . . We therefore approach the question of
> the District Court's jurisdiction to entertain this suit as
> an open one calling for a canvass of relevant
> jurisdictional considerations.

Hagans, 415 U.S. at 535 n.5 (citations omitted).

Applying the foregoing teachings to the issue at bar, we see that a year after the Peguero decision, in Slack v. McDaniel, speaking through Justice Kennedy, the same justice who authored the opinion in Peguero, the Court met the precise issue presented here:

> Where a district court has rejected the constitutional
> claims on the merits, the showing required to satisfy
> S 2253(c) is straightforward: The petitioner must
> demonstrate that reasonable jurists would find that the
> district court's assessment of the constitutional claims
> debatable or wrong . . . . This construction gives
> meaning to Congress' requirement that a prisoner
> demonstrate substantial underlying constitutional
> claims . . . .

120 S. Ct. at 1604.

What the Supreme Court did not say in the 1999 Peguero case cannot trump what the court explicitly said in Slack a year later, especially when both opinions were authored by the same justice. Accordingly, we reject the argument that the Court's decision in Peguero runs counter to the holding we reach today--that a certificate of appealability in a case brought under S 2253(c)(2) may issue, in the literal language of the statute, "only if the applicant has made a substantial showing of the denial of a constitutional right."

VI.

In determining whether the certificate of appealability was proper and thus whether we have jurisdiction to review

20

this petition, we examine whether Cepero had made (1) a substantial showing of a deprivation of (2) a constitutional right, so as to invoke our S 2253(c) jurisdiction. Petitioner alleges the District Court erred by enhancing his sentence, because the Government failed at sentencing to show beyond a preponderance of the evidence that he conspired to sell crack cocaine, and not some other form of cocaine base. His contention of error thus is misapplication of the Sentencing Guidelines, and he relies on our decision in United States v. James, 78 F.3d 851 (3d Cir. 1996) to support his claim.

Section 2D1.1 of the Sentencing Guidelines provides a much greater sentence for drug offenses involving crack cocaine (100 to 1, based on drug amount) than for offenses involving powder cocaine or some other form of cocaine base. In James, we held that the Government was required to prove at sentencing that the defendant distributed crack cocaine, not just cocaine base, before S 2D1.1 of the Sentencing Guidelines could be used to impose the increased sentence. 78 F.3d at 856. However, the facts and procedural posture in James are materially different than those in Cepero's S 2255 petition. The petitioner in James pursued review of his sentence on direct appeal. In contrast, Cepero sought post-conviction review of his sentence via a S 2255 petition. Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred. Reed v. Farley, 512 U.S. 339, 348 (1994); Young, 124 F.3d at 796. Under S 2253(c)(2), we have appellate jurisdiction over only those issues substantially shown to deny a petitioner a constitutional right. We find no such deprivation here.

Cepero's allegation here, that the sentencing court misapplied the Sentencing Guidelines in his case, is a question that does not present a constitutional issue under S 2253(c).5 See Buggs v. United States, 153 F.3d 439, 443

_____

5. Because application of the Sentencing Guidelines in this case does not implicate a fact that would increase the penalty of a crime beyond the statutory maximum, the teachings of Apprendi v. New Jersey, ___ U.S. __, 2000 WL 807189 (June 26, 2000), are not relevant here.

(7th Cir. 1998) ("[E]rrors in the implementation of the Sentencing Guidelines are generally not cognizable in a collateral attack."). Because of the specific misapplication of the Sentencing Guidelines that Appellant alleges in this case,6 we conclude that he has not "made a substantial showing of the denial of a constitutional right," and thus the District Court erred under S 2253(c)(2) by issuing a certificate of appealability. Accordingly, we do not have jurisdiction to review the merits of Appellant's case.

*  *  *

We will grant the Government's motion to dismiss the appeal for lack of subject-matter jurisdiction.

_____

6. We do not suggest that a misapplication of the Guidelines can never rise to the level of a constitutional deprivation.

22

RENDELL, Circuit Judge, concurring in part and dissenting in part:

Today we decide that the issuance of a certificate of appealability by a District Court is not sufficient to permit our review of the merits, but, rather, that we are obliged to consider whether the appellant was entitled to a certificate of appealability based on our view that we only have subject matter jurisdiction to hear an appeal if the certificate of appealability was properly issued. We reach this conclusion without reference either to the statutory language or to Congress's intent, the two factors which have traditionally been the hallmarks of our jurisprudence when interpreting whether prerequisites for suit or appeal are subject matter jurisdictional in nature. See , e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (concluding that "[t]he structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to" the conclusion that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court"); Shendock v. Director, 893 F.2d 1458, 1462 (3d Cir. 1990) (en banc) (finding the 60 day filing requirement contained in 33 U.S.C.S 921(c) for appeals of the decisions of the Benefits Review Board to be jurisdictional, in part because the statute uses that term) ("We also recognize that a priori attachment of the label `jurisdiction' to a statute's filing requirements without examination of its language and structure, as well as the congressional policy underlying it, would be an abdication of our duty to interpret the language of a statute in accordance with Congress's intent in passing it."). In so doing, we also reject the considered treatment of this issue by our fellow courts of appeals, which have found an improvidently granted certificate sufficient to permit appellate review, because we find their reasoning contrary to language contained in Hohn v. United States , 524 U.S. 236 (1998). See Soto v. United States, 185 F.3d 48, 52 (2d Cir. 1999) (finding that even the improvident issuance of a certificate of appealability confers appellate jurisdiction); United States v. Talk, 158 F.3d 1064, 1068 (10th Cir. 1998) (finding that "an erroneously-issued certificate does not deprive [the court] of jurisdiction to hear a certified appeal"); Young v. United States, 124 F.3d 794, 799 (7th

23

Cir. 1997). However, as I discuss below, the Supreme Court in Hohn addressed an issue quite different from the one before us. Therefore, I dissent from this portion of the majority's opinion. Given the majority's view on this issue, however, I concur in the next step it takes, namely its determination that the test for the issuance of a certificate of appealability requires that the petitioner make a substantial showing of the denial of a constitutional, rather than a federal, right.

I submit that neither the statutory language of S 2253(c) nor the habeas statute in its entirety can support the conclusion the majority reaches on the threshold issue. Section 2253(c)(1) simply states that: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -- . . . (B) the final order in a proceeding under section 2255." 28 U.S.C. S 2253(c)(1) & (c)(1)(B) (emphasis added). Section 2253(c)(2) explains: "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." Id. S 2253(c)(2) (emphasis added). Therefore, in line with the plain language, Cepero is entitled to a review of his case because a certificate of appealability was issued. Nothing in the statutory language suggests, let alone requires, otherwise. Certainly, no portion of the language suggests that satisfaction of the underlying certificate of appealability standard is the trigger to our jurisdiction. Rather, by stating that an appeal may not be taken unless a certificate of appealability is issued, the statute explains that it is simply the issuance of the certificate which provides the ticket to appellate review. Congress's limitation of the grounds for issuance should not render the certificate a nullity if improperly issued, absent a statement to that effect.

This reading is buttressed by the fact that S 2253(c)(2) also requires that there be a "substantial showing" of a denial of a constitutional right. If satisfaction of the one term is required for jurisdiction, surely satisfaction of the other, nestled right next to the first, is required as well. If the majority's reading is correct, it would appear that a court of appeals has a duty, under Steel Company v.

24

Citizens for a Better Environment, 523 U.S. 83, 94 (1998), to determine the "substantiality" of the showing of the deprivation in order to determine whether or not it has jurisdiction. "Substantiality" is not a quality that yields itself easily to analysis, to say the least, and it would be an odd statute which turned the existence of judicial power to hear an appeal on whether or not such an elusive quality were deemed existent. The easier reading, I submit, is that an issuing court should attempt to meet this standard, but if it missteps, it does not deprive the appeals court of power to review.

Furthermore, if S 2253(c)(2) is jurisdictional, why not (c)(3)? Subsection (c)(3), like (c)(2), lays out mandatory requirements for the issuing court to follow. The certificate of appealability must "indicate which specific issue or issues satisfy the showing required by paragraph (2)." But what if the certificate of appealability is wanting in this regard? In such a situation, remand for clarification might be appropriate, but it would be odd indeed if a court of appeals were required to dismiss an appeal underS 2253 for want of jurisdiction because the certificate of appealability did not "indicate which specific issues satisfy the showing." Yet this is the logical extension of the majority's interpretation.

It should be noted that two other provisions ofS 2253 describe and proscribe our jurisdiction, demonstrating that Congress knew how to limit appellate jurisdiction if it wanted to do so. Following the general grant of jurisdiction over habeas appeals in S 2253(a) (providing that "the final order shall be subject to review"), S 2253(b) then limits that jurisdiction in a particular case, and does so in clear language: "There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings." 28 U.S.C. S 2253(b) (emphasis added); see also Roba v. United States , 604 F.2d 215, 218 (2d Cir. 1979) (interpreting this language also contained in the previous version of S 2253 to be a limitation of appellate jurisdiction). I believe that there is a

25

clear difference between the language that there is "no right of appeal," and a provision that the issuance of a certificate of appealability is a condition to the taking of an appeal.

The lack of support for the conclusion that only the proper issuance of a certificate of appealability confers subject matter jurisdiction is particularly significant because, as the majority reasons and explains, Congress developed the certificate of appealability requirements from the preexisting certificate of probable cause mechanism. In a series of Supreme Court opinions addressing the contours of appellate review of the denial of habeas relief in S 2254 proceedings, the Supreme Court repeatedly explained that once a district court has granted a certificate of probable cause, the court of appeals must address the merits of the petitioner's appeal. See Nowakowski v. Maroney , 386 U.S. 542, 543 (1967) ("But when a district judge grants such a certificate, the court of appeals must grant an appeal in forma pauperis (assuming the requisite showing of poverty), and proceed to a disposition of the appeal in accord with its ordinary procedure."); see also Garrison v. Patterson, 391 U.S. 464, 466 (1968) (following Nowakowski); Carafas v. LaVallee, 391 U.S. 234, 242 (1968) (following Nowakowski).

The Supreme Court most recently explained the impact of the issuance of a certificate of probable cause in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which, of course, forms the basis for much of the debate over the meaning of the standard for the issuance of a certificate of appealability contained in the majority's opinion. In Barefoot , however, the Court also explained that: "When a certificate of probable cause is issued by the district court, as it was in this case, or later by the court of appeals, petitioner must then be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal." Id. at 893 (emphasis added). Previously, in Carafas, the Court explained that review on the merits was necessary because "[a]nything less than this, as we held in Nowakowski, would negate the office of the certificate of probable cause." Carafas, 391 U.S. at 242. The Supreme Court noted that this did not, however, prevent an appellate court from affirming the district court's decision on the merits in a summary, abbreviated fashion upon afinding

26

that the claim was frivolous or otherwise foreclosed. See Barefoot, 463 U.S. at 894.

In imposing the certificate of appealability requirement on habeas petitions in both state and federal cases, Congress specifically addressed two parts of the old certificate of probable cause mechanism. As we decide in this case, Congress strengthened the standard for the issuance of a certificate announced in Barefoot. Congress also addressed the question of whether a court may issue a certificate limited to particular issues, see 28 U.S.C.S 2253(c)(3), a question that was unclear during the certificate of probable cause era, see Sherman v. Scott, 62 F.3d 136, 138–39 (5th Cir. 1995) (describing a circuit split over whether a "limited" certificate of probable cause binds the reviewing court to consideration of those issues alone). Given that Congress clearly addressed those issues, and given the clear discussion of the impact of a certificate of probable cause in Barefoot, I submit that if Congress had intended to make the propriety of the issuance of a certificate of appealability jurisdictional in the manner conceived of by the majority, or had desired more generally that we review the decision to issue a certificate,[1] Congress would have phrased the statute in manner that makes clear this additional change from prior practice.

_____

1. The majority does not address whether the order issuing a certificate of appealability might be reviewable even if we did not decide that its proper issuance is jurisdictional. However, I can locate no rule or statute
that would constitute a grant of appellate jurisdiction to review the order
issuing a certificate of appealability (assuming that it cannot be deemed a final order of the district court). Federal Rule of Appellate Procedure 22, which describes how a petitioner may apply to this court for a certificate of appealability, makes no reference to the government's contesting a certificate once granted. See Fed. R. App. P. 22(b).

The Court of Appeals for the Seventh Circuit recently indicated that it had "discretion to decide the case by reviewing the validity of the CA or by going straight to the issues raised on appeal." United States v. Marcello, 212 F.3d 1005, 1007–08 (7th Cir. 2000). But see Lucidore v. New York State Division of Parole, 209 F.3d 107, 112 (2d Cir. 2000) (finding the state's objection to the certificate of appealability foreclosed
by Soto, 185 F.3d at 52). However, the Court in Marcello cites no authority for such review power.

Although the majority relies upon Hohn to reach its conclusion, I see nothing in Hohn, or for that matter, Peguero v. United States, 526 U.S. 23 (1999), or Slack v. McDaniel, ___ U.S. ___, 120 S. Ct. 1595 (2000), that undermines my conclusion. In Hohn, the Supreme Court simply concluded that the application for, and denial of, a certificate of appealability constituted a "case in the court of appeals" such that the Supreme Court had statutory jurisdiction to review the denial under S 1254(1). See Hohn, 524 U.S. at 241, 251 (overruling House v. Mayo , 324 U.S. 42, 44 (1945) (per curiam), which found that the application for, and subsequent denial of, a certificate of probable cause was not a "case in the court of appeals"). The Court's holding that the denial of a certificate of appealability may be reviewed because a "case" exists in the court of appeals for purposes of S 1254(1) tells us nothing about the role of a certificate of appealability; the Supreme Court has statutory jurisdiction to review all types of cases of which questions of jurisdiction make up but a small part. Furthermore, I fail to grasp the significance the majority attributes to the Supreme Court's determination in Hohn that decisions regarding the grant or denial of a certificate of appealability in the court of appeals are not administrative in nature. See ante at 9-11; see also Hohn, 524 U.S. at 245-46. The majority's analysis both presupposes that anything which is not "administrative" is jurisdictional, a conclusion that I think is clearly wrong, and posits that Hohn disproves the reasoning of those courts of appeals that have concluded that an appellate court need not examine the grounds for the issuance of a certificate of appealability. See Soto, 185 F.3d at 52; Talk, 158 F.3d at 1068; Young, 124 F.3d at 799; see also Gatlin v. Madding, 189 F.3d 882, 886-87 (9th Cir. 1999). I disagree. I see the reasoning of those courts, dictated by their views of the role of a certificate of appealability, to be sound. In Young, Judge Easterbrook focused upon the purpose of the certificate of appealability:

> The absence of a certificate of appealability precludes an appeal; should an erroneously issued certificate be treated the same as the lack of a certificate? We think not. The certificate is a screening device, helping to conserve judicial (and prosecutorial) resources. The

28

obligation to identify a specific issue concentrates the parties' attention (and screens out weak issues); the limitation to constitutional claims also reduces the number of appeals while simultaneously removing a category of claim that under Davis [v. United States, 417 U.S. 333 (1974)], and Reed [v. Farley, 512 U.S. 339 (1994)] has poor prospects. Once a certificate has issued, however, the case proceeds to briefing and decision; the resources have been invested. It is too late to narrow the issues or screen out weak claims. Perhaps a motion to dismiss an appeal on the ground that a certificate was improperly issued would serve some function. But once the briefs have been written and the case heard, there is little point in scrutinizing the certificate of appealability. An obligation to determine whether a certificate should have been issued, even if the parties do not present this issue for decision -- a step entailed by the conclusion that a proper certificate is a jurisdictional requirement-- would increase the complexity of appeals in collateral attacks and the judicial effort required to resolve them, the opposite of the legislative plan.

Young, 124 F.3d at 799 (emphasis added).

The strongest support for the majority's reliance on Hohn comes from the Supreme Court's various characterizations of the role of the certificate of appealability as "jurisdictional." However, I am unwilling to place significance on random statements that have no bearing on the actual issue raised in the case, let alone its holding. I also note that in Slack, decided after Hohn, the Supreme Court characterized the certificate of appealability in a way that would suggest it is not jurisdictional in the manner the majority concludes. See Slack, 120 S. Ct. at 1603 ("The [certificate of appealability] statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal."). Further, in Peguero, the Supreme Court addressed a federal question on the merits without reviewing either the propriety of the initial grant of a certificate or the Court's own appellate jurisdiction to hear the case. While I agree with the majority that Peguero does not compel a conclusion as to the

29

meaning of S 2253(c)(2), see ante at 17-19, I, nonetheless, think that drawing some meaning from the Court's silence in Peguero is no worse than finding meaning regarding the issue before us in the Court's opinion in Hohn .

Numerous efforts have been made over the years to streamline the process by which the federal courts are to sift out those habeas petitions which are unworthy of the expenditure of additional judicial resources, and Congress considered numerous options before passing AEDPA. See Hunter v. United States, 101 F.3d 1565, 1578-83 (11th Cir. 1996) (tracing and discussing the numerous proposed reform bills eventually leading to the enactment of AEDPA); Judge Henry J. Friendly, Is Innocence Irrelevant?: Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142 (1970) (suggesting that district courts should not be permitted to grant certificates of probable cause and suggesting that the certificate of probable cause requirement be extended to petitions from federal custody). Given the concerns expressed by Congress regarding the efficiency of the process, I cannot help but agree with the other circuit courts of appeals that have counseled against an interpretation of the statute that would require us to engage in a threshold examination of the decision of the district court to issue a certificate of appealability. See, e.g., Young, 124 F.3d at 799. While it could be argued that a threshold review of the issuance of the certificate of appealability in cases like this, where the error claimed is not constitutional, may promote efficiency, I note that after our decision in this case clarifies the meaning of S 2253(c)(2), district courts most likely will not grant certificates of appealability when a constitutional right is not implicated.

While a desire for efficiency should not dictate that we shirk our duty to examine our jurisdiction, if such a duty is clearly imposed by the statute, knowledge that concerns about efficiency were at the heart of Congress's decision to modify the certificate requirements should inform our interpretation of what the statute does in fact require. I would hold the modification of the Barefoot  standard was meant to restrict the issuance of a certificate of appealability, but that once issued, such issuance should lead to merits review.

30

Chief Judge BECKER and Judge SLOVITER join in this concurring and dissenting opinion.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit