

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-2002

# USA v. Fisher

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3134

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Fisher" (2002). *2002 Decisions.* Paper 537.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/537

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 01-3134


UNITED STATES OF AMERICA

v.

MICHAEL FISHER,
                    Appellant


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 96-cr-00144)
District Judge:  Hon. Gary L. Lancaster


Submitted Under Third Circuit LAR 34.1(a)
July 26, 2002

Before:  SLOVITER, NYGAARD, and BARRY, Circuit Judges

(Filed:  August 26, 2002)


OPINION OF THE COURT SLOVITER, Circuit Judge.

The appellant, Michael Fisher, appeals the denial of his motion filed pursuant to 28 U.S.C.  2255 (2002) to vacate his conviction and sentence for possession with intent to distribute more than fifty grams of crack cocaine in violation of 21 U.S.C.  841(a)(1) (2002). The parties are familiar with the facts and underlying proceedings and we need discuss them only briefly.

I.

Fisher was convicted on four counts of possession with intent to distribute less than five grams of crack cocaine and one count of possession with intent to distribute more than fifty grams of crack cocaine, in violation of 21 U.S.C.  841(a)(1).  The first four counts stem from four separate controlled purchases of 1/8 ounce crack cocaine each by a confidential informant from Fisher at 1765 Skyline Drive in April and May 1996.

The fifth count stemmed from the seizure of crack cocaine and drug paraphernalia from 1765 Skyline Drive, Apartment 27.  This apartment was searched pursuant to a search warrant issued after a police officer hiding in another apartment at 1765 Skyline Drive witnessed Fisher enter Apartment 27 with a key and then leave a few minutes later, locking the door with a key.  Fisher only seeks to vacate his conviction on the fifth count.

Fisher was arrested on June 20, 1996.  Several plastic bags of crack cocaine, a large amount of cash (which included two of the fifty-dollar bills used during the controlled buys), a digital scale, and four Bell Atlantic telephone bills addressed to Michael Fisher at Apartment 27 were seized from Apartment 27.  A fingerprint analysis of the bags of crack cocaine was ordered in July 1996 by Agent Baldwin, the DEA agent assigned to the case.  However, the fingerprint analysis was not completed until the end of January 1997, after Agent Baldwin followed up with the DEA lab.  Agent Baldwin

received the results of the analysis, which were negative for fingerprints, in February 1997, after the trial but prior to sentencing. He did not forward the results to defense counsel.

When questioned by the police after his arrest about the crack cocaine found in Apartment 27, Fisher said that he had bought a half of a kilo of crack the week before. Fisher also told the police that he lived in Apartment 27 but had rented Apartment 48 to get away from Ben Todd's apartment across the hall as it was attracting attention due to drug activity. Apartment 27 was rented to a Bobby Rideout and Apartment 48 was rented to Larry Eyrolles.

At trial, the government introduced Fisher's statement to the police made after his arrest and also introduced evidence that Fisher told two police officers that he lived in Apartment 27 during a previous, unrelated investigatory stop. The earlier stop occurred in March 1996, when officers were responding to a report that an "oriental guy named 'Drey' was on his way over [to 1765 Skyline Drive] with a piece." App. at 677. The officers waited outside the building and stopped Fisher's car after they watched Fisher and two others pull up, go into the building, and then leave the building again a few minutes later. When Fisher's vehicle was stopped, he said that he lived at 1765 Skyline Drive, Apartment 27.

The government also introduced evidence that while in police custody during an unrelated incident, Fisher called someone named "Ben," asked him to go over to his "crib" and get two stacks of money from a shoebox on a shelf in a cupboard across from the bathroom to bring to his mother. App. at 426-427. The money seized from Apartment 27 was found in a shoebox in a closet, though on the floor.

After a jury found Fisher guilty on all five counts, Fisher appealed his conviction and sentence, this court affirmed, and the Supreme Court denied certiorari. Fisher then filed a motion pursuant to 28 U.S.C. 2255, claiming Brady violations and ineffective assistance of counsel. The District Court denied the motion after holding a hearing. This appeal followed.

## II.
### A.
#### Brady Violation

In Brady v. Maryland, 373 U.S. 83 (1963), and later cases interpreting it, see, e.g., United States v. Agurs, 427 U.S. 97 (1976), the Supreme Court held that the prosecution must disclose favorable evidence to the defendant. In considering claims of a Brady violation, this court exercises plenary review over the District Court's legal conclusions but looks at the factual findings for clear error. See United States v. Cepero, 224 F.3d 256, 258 (3rd Cir. 2000).

Fisher contends that the government violated Brady when it failed to turn over the negative results of the fingerprint test done on the plastic bags of crack cocaine seized from Apartment 27. Fisher claims that the test results were exculpatory because they could show that he had not handled the bags of crack cocaine as the government contended. He also contends that the results could have been used to impeach Sgt. Keith Henderson, who testified that fingerprint analysis was not ordered because the police had enough evidence to show that the cocaine was Fisher's and that Fisher said that he handled the bags.

There are three elements needed to show a Brady violation: "(1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense." United States v. Perdomo, 929 F.2d 967, 970 (3rd Cir. 1991) (citing Moore v. Illinois, 408 U.S. 786 (1972)). The requirement applies not only to evidence in the prosecutor's possession but also to information available to the prosecutor or "in the possession of some arm of the state." Id. at 971. Favorable evidence includes impeachment evidence as well as evidence going to guilt or innocence. United States v. Bagley, 473 U.S. 667, 676 (1985). However, the evidence is deemed "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682.

In the present case, the District Court found that there was no Brady violation because first, the results did not exist until after the trial and the government was not required to produce nonexistent evidence and second, the results were not material. However, the authority relied on by the District Court is not applicable here. United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980), refers to a voice print

analysis that was never ordered or completed. In the instant case, the tests had been ordered but were not ready at trial.

"[T]he availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state." Perdomo, 929 F.2d at 971. Agent Baldwin knew that the request for fingerprint analysis had been submitted. That the tests were not completed in time for the trial due to the government's mistakes should not immunize the government from its responsibility to turn exculpatory information over to the defense, particularly as Agent Baldwin knew the analysis was being completed while the trial was ending and received the results of the analysis a few weeks after the trial but before sentencing. Further, the District Court's finding that there was no evidence of misconduct or an intentional delay of the analysis by the government is irrelevant as the government's motivation for withholding evidence is immaterial. See Agurs, 427 U.S. at 110 & n.17. Therefore, for purposes of the Brady analysis, we will assume arguendo that the results were in the government's possession and were not produced when required, and that Fisher can show that the negative report would have been favorable to his case.

However, Fisher is not able to show that the evidence is material to his defense. While the evidence of the lack of fingerprints might have been helpful, it is not likely that it would reasonably have led to a different verdict. There is ample other evidence produced by the government showing that Fisher lived in Apartment 27, including Fisher's admissions to the police that he lived in Apartment 27, the testimony of the police officer who saw Fisher enter the apartment with a key, and the phone bills for Apartment 27 in Fisher's name. The negative fingerprint analysis did not conclusively show that Fisher never handled the bags, only that there were no fingerprints showing that Fisher had handled those bags. This does not lead to a reasonable probability that the jury would have found Fisher not guilty of possessing with intent to distribute more than fifty grams of crack cocaine.

As Fisher is not able to show that the evidence would reasonably have changed his guilty verdict, his claim of a Brady violation does not succeed.

B.

### Ineffective Assistance of Counsel

This court reviews the district court's factual findings on an ineffective assistance of counsel claim for clear error, but conducts a plenary review of the legal conclusions of "whether the facts thus found constitute constitutionally ineffective assistance of counsel." Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1430-31 (3rd Cir. 1996).

Fisher bases his ineffective assistance of counsel claim on two issues. He alleges that his defense counsel should have moved to suppress his statements that he lived in Apartment 27 made during the March 1996 investigatory stop as fruits of an illegal stop. He also claims that had his defense counsel better prepared for the testimony about the phone call to "Ben," counsel could have conducted a better cross examination and shown that Fisher was not referring to Apartment 27. Fisher alleges that had defense counsel done either of these things, the government would not have been able to tie him to Apartment 27 and the verdict would have been different.

An ineffective assistance of counsel claim requires that the defendant show that the counsel's performance was deficient and that the performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is evaluated as to whether it was "reasonable considering all the circumstances." Id. at 688. To show prejudice, the defendant must show that there is a "reasonable probability that, but for counsel's errors, the trial's outcome would have been different." Hess v. Mazurkiewicz, 135 F.3d 905, 909 (3rd Cir. 1998). The reviewing court does not need to first determine whether counsel's performance was unreasonable under the circumstances and then look at prejudice it can first determine whether the errors were prejudicial and then decide if counsel's performance was unreasonable. Strickland, 466 U.S. at 697.

Here, the court does not need to decide whether counsel's actions were unreasonable under the circumstances as Fisher cannot show that his counsel's omissions were prejudicial to his defense. Fisher's statement during the investigatory stop was not the only evidence presented by the government tying Fisher to Apartment 27. After he was arrested, Fisher told the police that he lived in Apartment 27. He discussed the crack

cocaine found in the apartment as if it were his.  Two of the fifty-dollar bills used in the controlled buys were found in the apartment, along with four phone bills addressed to Fisher at Apartment 27.  During one of the controlled buys, a police officer saw Fisher enter Apartment 27 using a key, then lock it afterwards.  Even without Fisher's March 1996 statements, the government had presented enough evidence for the jury to tie Apartment 27 and the crack cocaine found in it to Fisher.  In light of this evidence, even if defense counsel had conducted a better cross examination regarding Fisher's phone conversation with "Ben" and had shown that Fisher was not necessarily referring to Apartment 27, it is not probable the verdict would have been different.

As Fisher was not able to show that defense counsel's omissions were prejudicial to his defense, he cannot meet one of the two prongs required by Strickland and thus, cannot show ineffective assistance of counsel.

III.

For the reasons set forth, we will affirm the order of the District Court denying Fisher's petition under   2255. _____

TO THE CLERK:

Please file the foregoing opinion.


/s/ Dolores K. Sloviter
Circuit Judge