**UNITED STATES of America,**
**Plaintiff/Respondent,**

v.

**Bobby Lee BRIDGES,**
**Defendant/Movant.**

**Nos. 98–40068–DES, 01–3167–DES.**

United States District Court,
D. Kansas.

March 5, 2002.

Dwight L. Miller, Topeka, KS, for Bobby Lee Bridges.

Anthony W. Mattivi, Topeka, KS, for U.S.

## *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on defendant's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 151) brought pursuant to 28 U.S.C. § 2255. In its Order (Doc. 156) dated June 27, 2001, the court granted defendant's Motion for Leave (Doc. 155) to amend his original § 2255 motion. Thereafter, the government filed a Response (Doc. 159), which addressed defendant's original and amended grounds for relief. Defendant later filed a Reply (Doc. 162). Defendant subsequently filed two additional Motions for Leave (Docs. 163, 164) to amend his original § 2255 motion. For the following reasons, defendant's § 2255 motion shall be denied, and his subsequent motions for leave to amend will be transferred to the Tenth Circuit.

## I. BACKGROUND

Defendant was charged in three counts of a four count indictment with his co-defendant, Michael Huffman. On October 26, 1998, defendant pled guilty in this court to one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846; one count of manufacturing methamphetamine, in violation of 21 U.S.C. § 841; and one count of endangering human life while manufacturing methamphetamine, in violation of 21 U.S.C. § 858. Defendant's arrest and plea were based on evidence gathered from two controlled buys of methamphetamine by a confidential informant and a search of defendant's residence.

Defendant's plea was entered pursuant to a plea agreement reached with the government. According to the terms of the agreement, in exchange for defendant's plea and cooperation, the government agreed to: (1) bring no further charges against defendant resulting from the activities that formed the basis of the indictment; (2) not file an information pursuant to 21 U.S.C. § 851, regarding defendant's prior felony drug convictions; (3) recommend defendant receive a three level adjustment for acceptance and responsibility; (4) file a motion for downward departure if defendant provided substantial assistance pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e); and (5) not oppose defendant's argument at sentencing that he should receive a sentence at the bottom end of the appropriately calculated guideline range.

As will be discussed at length below, the plea agreement also contained the following language regarding drug quantity:

> The defendant agrees to not oppose a recommendation by the government at the time of sentencing that the defendant be sentenced for a quantity of (actual) methamphetamine in excess of 100 grams (thus subjecting the defendant to the mandatory minimum sentencing provisions of Title 21, United States Code, Section 841(b)(1)(A)). The defendant agrees that the factual basis for this recommendation by the government is true, actual, and supported by laboratory analysis and reports completed by the Kansas Bureau of Investigation during the investigation of this case.

(Plea Agreement ¶ 4(b) attach. to Pet. to Enter Plea of Guilty (Doc. 93)).

The presentence investigation report in this case revealed a forensic chemist for the Kansas Bureau of Investigations estimated, based on the amount of iodine seized from defendant's clandestine lab, that defendant was capable, utilizing a fifty percent yield, of producing 105 grams of (actual) methamphetamine. The 100 grams of (actual) methamphetamine computed into an initial offense level of thirty-two pursuant to U.S.S.G. § 2D1.1(c)(4). A

three level enhancement for endangering human life was applied pursuant to U.S.S.G. § 2D1.10. However, a three level reduction was also applied for defendant's acceptance and responsibility pursuant to U.S.S.G. § 3E1 .1. In the end, the court applied a total offense level of thirty-two. Consideration of defendant's criminal history revealed a total of twenty-four criminal history points, which amply qualified defendant for the criminal history category of VI.

Based on a total offense level of thirty-two and a criminal history category of VI, the guideline range for imprisonment was 210 to 262 months. The government's motion for downward departure recommended a four level departure to a guideline range of 140 to 175 months of imprisonment. On May 18, 1999, defendant was sentenced by the court to 175 months of imprisonment on counts one and two and 120 months on count three to be served concurrently with counts one and two.

Defendant subsequently appealed his sentence to the Tenth Circuit. On appeal, defendant raised two issues: (1) the court erred in assessing a three-level enhancement pursuant to U.S.S.G. § 2D1.10 over his objections without requiring the government to present evidence supporting the enhancement; and (2) the court erred in using count three, endangering human life while illegally manufacturing a controlled substance, as the most serious count for grouping pursuant to U.S.S.G. § 3D1.2. In an unpublished opinion dated June 21, 2000, the Tenth Circuit affirmed defendant's sentence. *United States v. Bridges*, 2000 WL 796079, at *3, 216 F.3d 1088 (10th Cir.2000).

## II. DEFENDANT'S CLAIMS

Within defendant's original and first amended § 2255 motion he levies the following grounds for relief: (1) the court erred in applying the sentencing guidelines

by failing to make a factual determination regarding the quantity of drugs, defendant was responsible for; (2) *Apprendi* is applicable; (3) methamphetamine was never properly reclassified as a Schedule II controlled substance; (4) defense counsel was ineffective; and (5) the government breached the plea agreement.

## III. DISCUSSION

### A. Drug Quantity

 In sentencing defendant, the court found defendant responsible for approximately 100 grams of (actual) methamphetamine. Although somewhat convoluted, defendant appears to now argue that either the court erred in using this quantity of drugs and/or the court erred in using the quantity without first holding an evidentiary hearing. Although defendant raised two issues related to his sentencing on direct appeal, he failed to raise the issue of drug quantity before the appellate court. It is well established, as the government asserts, that "[a] defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Talk*, 158 F.3d 1064, 1067 (10th Cir.1998) (internal citation and quotation marks omitted). *See also United States v. Allen*, 16 F.3d 377, 378 (10th Cir.1994) ("section 2255 is not available to test the legality of matters which should have been raised on appeal") (internal citation and quotation marks omitted). Defendant fails to supply the court with any "cause" for his procedural default or grounds for finding a fundamental miscarriage of justice, so the court is compelled to enforce the procedural bar and deny to

reach the claim's merits. All relief will be denied as to this issue.

■ In the alternative, even if the claim's merits were considered, the court would likely deny relief. As noted above, integral to defendant's plea agreement was his stipulation or agreement to the 100 grams of (actual) methamphetamine. Defendant stated in open court that the statements in his petition to enter a plea of guilty, which incorporated the plea agreement, were true and correct. (Change of Plea Hr'g Tr. at 12). In his original motion, defendant concedes the plea agreement was entered knowingly and voluntarily. Furthermore, defendant did not argue before the Tenth Circuit that his plea was the product of coercion. *See Bridges*, 2000 WL 796079 at \*2, 216 F.3d 1088 (noting defendant did not challenge voluntary nature of the plea before the appellate court). As asserted by the government, defendant's stipulation to the proper amount of drugs attributable to him for sentencing purposes certainly satisfied the government's burden of establishing the quantity of drugs for which defendant was responsible. The court employed a quantity agreed to by the parties, which had a reasonable factual basis listed in the presentence investigation report. *See* U.S.S.G. § 6B1.4(a).

### B. *Apprendi*

Defendant asserts the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) requires vacation of his sentence.[1] *Apprendi* stands for the following rule of constitutional law: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.

■ In the present case, the charging instrument failed to include specific drug quantities. Assuming for the moment that defendant's plea agreement did not include the drug quantity stipulation, under *Apprendi*, defendant could only have been sentenced in accordance with the catchall sentencing provision contained in 21 U.S.C. § 841(b)(1)(C). *United States v. Jackson*, 240 F.3d 1245, 1248 (10th Cir. 2001) ("In other words, after *Apprendi*, a trial court may not utilize §§ 841(b)(1)(A) and 841(b)(1)(B) for sentencing without the drug quantity being charged in the indictment. Instead, the defendant may be sentenced only under § 841(b)(1)(C), which defines penalties for offenses involving [controlled substances] without reference to drug quantity . . . ."), *overruled on other grounds by United States v. Prentiss*, 256 F.3d 971 (10th Cir.2001). Therefore, the applicable statutory maximum would be twenty years. 21 U.S.C. § 841(b)(1)(C) ("such person shall be sentenced to a term of imprisonment of not more than 20 years"). Defendant's sentence of 175 months falls well below the 240 month maximum, so, by its very terms, defendant's sentence did not run afoul of *Apprendi*. All relief will be denied as to this issue.

In the alternative, even though defendant's actual sentence fell below the twen-

---

1. Whether *Apprendi* should be applied retroactively on initial § 2255 motions is an issue currently undecided in the Tenth Circuit. *See United States v. Sanders*, 247 F.3d 139, 151 (4th Cir.) (concluding *Apprendi* did not apply retroactively to collateral review of initial § 2255 motion), *cert. denied,* — U.S. —, 122 S.Ct. 573, 151 L.Ed.2d 445 (2001). *See* *also Browning v. United States*, 241 F.3d 1262, 1266 (10th Cir.2001) (en banc) (concluding *Apprendi* does not apply to second or successive habeas petitions, absent express direction from the Supreme Court). The court declines to consider this question, for even assuming *Apprendi* is applicable, defendant's claim is wholly lacking in merit.

ty year maximum contained in the catchall statute, defendant's stipulation to the 100 grams of (actual) methamphetamine exposed him to the statutory maximum of life pursuant to 21 U.S.C. § 841(b)(1)(A). *Bridges,* 2000 WL 796079 at *2, 216 F.3d 1088 (noting defendant's stipulation to quantity triggered the sentencing provisions of 21 U.S.C. § 841(b)(1)(A)). Once again, 175 months is less than the statutory maximum, so there cannot be an *Apprendi* violation.

### C. Classification of Methamphetamine

■ Defendant next asserts methamphetamine has never been properly reclassified as a Schedule II controlled substance pursuant to 21 U.S.C. § 812(c) (stating substances shall remain within their classifications "unless and until amended pursuant to section 811 of this title"). Defendant's interpretation of the statute is flawed, for, contrary to his assertion, reclassification does not require a congressional amendment. Instead, the statute empowers the Attorney General to regulate controlled substances and their respective classifications. 21 U.S.C. § 811. Without question, methamphetamine is a properly classified Schedule II controlled substance. *United States v. Youngblood,* 949 F.2d 1065, 1066 (10th Cir.1991) ("Under 21 C.F.R. § 1308.12(d), methamphetamine or its isomers is a Schedule II controlled substance . . . ."). All relief will be denied as to this issue.

### D. Ineffective Assistance of Counsel

The Tenth Circuit recently reiterated the standard for considering claims of ineffective assistance of counsel:

> To prevail on an ineffective assistance of counsel claim, [defendant] must demonstrate (1) that representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant.

*See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Pursuant to this standard, [defendant] must show that defense counsel's performance was not simply wrong, but instead was completely unreasonable. *See Hoxsie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir.1997). [Defendant] bears a heavy burden to prevail on this claim, for he must overcome the presumption that defense counsel's actions were sound trial strategy. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. To show prejudice, [defendant] must establish that, but for counsel's errors, there was a reasonable probability that the outcome of his trial would have been different. *See id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

*Gonzales v. McKune,* 247 F.3d 1066, 1072–73 (10th Cir.2001). *See also Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.")

### 1. Deficient Representation

■ Defendant asserts his counsel was deficient in two respects: (1) counsel should have challenged the drug quantity and rejected the plea agreement; and (2) counsel coerced defendant into entering his plea. The court rejects defendant's arguments. First, challenging the drug quantity would have necessarily required a rejection of the proposed plea agreement. As outlined above, the agreement included several concessions on the part of the government. In particular, the agreement protected defendant from his own prior drug convictions under 21 U.S.C. § 851, and the agreement provided for an acceptance and responsibility reduction and

downward departure. As the court noted at defendant's sentencing, defendant's extensive criminal history easily placed him within the highest criminal history category, but due to his assistance, he received a downward departure of eighty-seven months. (Sent. Hr'g Tr. at 7). In all, the agreement negotiated by counsel on behalf of defendant was remarkable under the circumstances. The court finds counsel was not deficient in seeking a compromise with the government.

■ Defendant fails to explain his claim of coercion or offer any support in its furtherance. At defendant's change of plea hearing, the court delved extensively into defendant's motivation for entering his plea. (Change of Plea Hr'g Tr. at 10). The court is now unpersuaded by baseless accusations. The court finds no grounds for concluding defense counsel acted inappropriately in advising defendant to enter his plea.

### 2. Prejudice

Although the court found defense counsel was not deficient, the court will briefly consider the prejudice prong of the *Strickland* analysis. Defendant asserts the alleged instances of deficient representation prevented him from rejecting the plea agreement and proceeding to trial. In this context, the Supreme Court has stated, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. This inquiry into what defendant may have done is to be adjudged objectively. *See id.*

In this case, the government had an overwhelmingly strong evidentiary basis for convicting defendant. As described by the government at defendant's change of plea, the government was prepared to admit evidence seized from defendant's apartment and the testimony of several witnesses directly implicating defendant in the charged offenses. (Change of Plea Hr'g Tr. at 13–16). In particular, the individual who sold the methamphetamine to the confidential informant admitted that the methamphetamine was produced by defendant.

If convicted at trial, defendant would have faced the sentencing guidelines without the assistance of the government's concessions. As mentioned earlier, under *Apprendi*, defendant could only have been sentenced under 21 U.S.C. § 841(b)(1)(C). However, after trial, the government could have filed an information pursuant to 21 U.S.C. § 851, which would have resulted in a thirty year statutory maximum.[2] Without the three level assistance and responsibility reduction, defendant's sentence would have been calculated using a total offense level of thirty-five and a criminal history category of VI. The guideline range would have been in excess of 300 months.

Under the plea agreement, defendant was sentenced to approximately fifteen years. On the other hand, going to trial would have meant facing a possible sentence of approximately thirty years. Given this disparity in outcome, the court finds defendant has not satisfied his burden in demonstrating a likely probability that he, or any objective defendant, would have rejected the plea and faced trial.

Having found petitioner failed to carry his burden under either prong of the

---

2. Once again, the court has factored in an assumed retroactive *Apprendi* impact. In reality, at the time defendant was weighing his options, he was facing a mandatory *minimum* sentence of twenty years to life as prescribed by 21 U.S.C. § 841(b)(1)(A).

*Strickland* analysis, the court will deny all relief as to this issue.

### E. Breach of Plea Agreement

■ Defendant's final argument is that the government breached the plea agreement. Apparently, defendant believes the plea agreement presented to him by his counsel is different than the agreement finally entered by the parties. In particular, defendant asserts the "actual" plea agreement obligated the government to recommend, at the time of sentencing, a sentence at the low end of the appropriate sentencing range. On the other hand, the government now argues the plea agreement only obligated the government not to oppose defendant's arguments for a sentence at the low end of the range. The breach is, therefore, embodied in the difference between recommending a sentencing and not opposing a sentence. The court finds defendant's argument unpersuasive.

First, the plea agreement presented in open court, bearing defendant's and counsel's signatures, clearly states: "The government agrees *not to oppose* the defendant's argument at sentencing that he should receive a sentence at the bottom end of the sentencing range to which he is assigned ...." (Plea Agreement ¶ 4(f) attach. to Pet. to Enter Plea of Guilty) (emphasis added). Second, during defendant's sentencing, the government reemphasized to the court and defendant it had fulfilled its obligation under the agreement by not opposing, as compared to recommending, a low end sentence. (Sentencing Hr'g Tr. at 11).

Defendant's argument that he somehow signed a different agreement or was duped in some other fashion is completely unsupported by the record. The government did not oppose defendant's arguments—thereby fulfilling its obligation. All relief will be denied as to this issue.

### F. Defendant's Pending Motions for Leave to Amend

As noted earlier, defendant has filed three motions for leave to amend his original § 2255 motion. While the first motion was granted, the court has yet to consider the remaining two motions. The first pending motion for leave to amend was filed on October 9, 2001 (Doc. 163) and the second was filed on November 19, 2001 (Doc. 164). Both motions seek to raise additional grounds for relief.[3]

■ Unlike the first motion, however, the two presently pending motions were filed outside the one year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2255. Under the AEDPA, a defendant has one year from the date his conviction becomes final to file his § 2255 motion. *Id.* In this case, the Tenth Circuit entered its judgment affirming defendant's sentence on June 21, 2000. According to Supreme Court rule, defendant had ninety days in which to file a petition for a writ of certiorari. Sup.Ct. R. 13.1. Defendant declined to seek the writ. Therefore, defendant's conviction became final when the ninety days expired on September 21, 2000. *See United States v. Burch*, 202 F.3d 1274, 1276 (10th Cir.2000) (finding that if a defendant does not file a

**3.** While one of defendant's pending motions for leave to amend (Doc. 164) revisits the issue of drug quantity, the court finds it raises a distinct argument from defendant's original § 2255 motion. Specifically, the original motion argued the court erred in failing to hold an evidentiary hearing to determine drug quantity, while the pending motion argues defendant's equal protection rights were violated by the imposition of defendant's sentence.

petition for a writ of certiorari after a direct appeal, the judgment of conviction becomes final when the time for such filing expires); Sup.Ct. R. 13.3 (stating petitions are timely if filed within ninety days of entry of judgment, irrespective of date the mandate is issued). Therefore, defendant had until September 21, 2001, to file his § 2255 motion. Both of the pending motions for leave to amend were filed after this date and must be construed as untimely.

 Although not argued for by defendant, the Tenth Circuit has held that the relation back doctrine embodied in Rule 15(c) of the Federal Rules of Civil Procedure may apply to untimely requests to amend § 2255 motions. *United States v. Espinoza–Saenz,* 235 F.3d 501, 505 (10th Cir.2000). However, Rule 15(c) will only operate to save an untimely amendment if (1) the original motion was timely and (2) the proposed amendment does not seek to add a new claim or insert a new theory into the case. *Id.* (citing *United States v. Thomas,* 221 F.3d 430, 431 (3d Cir.2000)). As stated above, both of defendant's untimely amendments present new claims or theories. As such, Rule 15(c) is inapplicable.

The court is left with two untimely motions for leave to file amendments, so, ordinarily, the court would deny the motions. In the context of § 2255 motions, however, the court is without authority to consider the motions. The court must interpret the untimely motions as "second or successive" § 2255 motions and transfer the pleadings to the Tenth Circuit. *Id.* at 503. *See also* 28 U.S.C. § 2255 ("[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals").

## IV. CONCLUSION

With the exception of the first issue, which was found to be procedurally barred, the court considered and rejected all of defendant's arguments on their merits. All relief pursuant to 28 U.S.C. § 2255 shall be denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that defendant's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 151) brought pursuant to 28 U.S.C. § 2255 is denied.

**IT IS FURTHER ORDERED BY THIS COURT** that defendant's Motions for Leave (Docs. 163 and 164) to file amendments to his § 2255 motion are transferred to the United States Court of Appeals for the Tenth Circuit. The clerk of the court shall mail the motions and a copy of this order to the United States Court of Appeals for the Tenth Circuit.